[Nos. G000926, G000930. Fourth Dist., Div. Three. Nov. 28, 1984.]

JOSEPH FOWLER, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Ronald Y. Butler, Public Defender, Frank Scanlon, Assistant Public Defender, James Dean Allen and James J. Barnett, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, William W. Bedsworth and Craig McKinnon, Deputy District Attorneys, for Real Party in Interest.

## OPINION

CROSBY, J.—Joseph Fowler seeks two extraordinary writs, one to overturn the superior court's denial of a nonstatutory speedy trial/due process motion, the other to reverse the court's rejection of a motion to suppress his statements to police, as well as a stolen handgun and heroin found in his possession when officers responded to an anonymous report of a burglary in progress at his residence. We stayed the trial and issued alternative writs; we now conclude only the first petition has merit, in part.

### I

Fowler and his family reside on Kettler Lane in Huntington Beach. Shortly before 6 p.m. on January 16, 1983, Huntington Beach Police Officer Gildea responded to an anonymous report of a burglary at that location. The officer remained in the evening shadows for several minutes and saw Fowler walk from the front of his residence to a motorhome parked in the driveway. Gildea, his gun drawn and flashlight directed at Fowler, yelled "Freeze, Police Officer." Instead, Fowler ran and Gildea gave pursuit. After about 75 yards, Fowler tripped, dropping a loaded gun as he fell. He was arrested for interfering with a police officer and receiving stolen property after a radio call revealed the pistol was listed as stolen; heroin was found in his possession during the booking search.

Fowler was released on bail the following day, January 17. He appeared in court as directed on February 17 and March 3, 1983. On both occasions he was advised no criminal complaint had been filed. After the second appearance, bail was exonerated.

Nevertheless, a complaint charging Fowler with possession of a firearm by an ex-felon (Pen. Code, § 12021) and possession of heroin (Health & Saf. Code, § 11350) had been issued on February 16, 1983, the day before his first scheduled appearance, and filed on February 28, 1983, a few days before the second. A notice to appear was finally mailed on April 27, 1983, but was returned as undeliverable for some reason. Fowler did not appear thereafter, and a bench warrant was issued on May 5, 1983. He was arrested on the warrant on May 19, 1983.

Fowler moved to dismiss the information based on denial of his rights to due process and speedy trial and because police failed to preserve the tape recording of the dispatcher's conversation with the unknown person who reported the burglary. Per departmental procedures the tape was erased or reused on the 101st day after Fowler's original arrest. Tapes are only preserved if the department receives a subpoena before the expiration of the 100-day period required by Government Code section 26202.6, but that date ran before Fowler was rearrested in May. Based on the loss of the tape, Fowler also brought a motion to suppress on the theory there was insufficient cause for the detention absent the recording of the anonymous call. (*Whiteley* v. *Warden* (1971) 401 U.S. 560 [28 L.Ed.2d 306, 91 S.Ct. 1031]; *People* v. *Harvey* (1958) 156 Cal.App.2d 516 [319 P.2d 689].)

Fowler testified two Los Angeles police officers who arrested him in July 1982 threatened to get even after the charges were dismissed. He also presented declarations from 15 neighbors who denied responsibility for the anonymous call. He argued police destruction of the tape-recorded burglary call prevented him from proving it was actually placed by one of the Los Angeles officers. A Los Angeles police psychologist testified that "stiffed-in" calls, as they are yclept, are not uncommon in his experience.

The Huntington Beach dispatcher testified she no longer had an independent recollection of the telephone call and review of the computer log did not refresh it. That document did confirm the reception of the call, however. It contains the information the dispatcher typed into the computer, reflecting the caller gave a nonexistent address, 16553 Kettler, and hung up before identifying himself.

## II

Whether couched in terms of denial of the right to a speedy trial, sanctions for failure to preserve material evidence (*People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361]), or suppression of evidence obtained as the result of a detention attempted without probable cause (Pen. Code, § 1538.5), Fowler claims the destruction of the tape after the criminal complaint was filed violated Government Code section 26202.6 and requires dismissal of the charges against him. That section provides in part, "the head of a department of a city, county, or city and county, public safety communications center, or the head of a special district after 100 days may destroy recordings of telephone and radio communications maintained by the department or the special district. Such destruction shall be approved by the legislative body and the written consent of the agency attorney shall be obtained. In the event that such recordings are evidence in any claim filed or any pending litigation, such recordings shall be preserved until

pending litigation is resolved."[1] Read literally, the statute was violated here because litigation in the form of a felony criminal complaint was pending against Fowler when the tape was erased on the 101st day after his arrest—although he had yet to be rearrested on the bench warrant. But we believe the statute must be reasonably construed to permit destruction in the absence of actual notice that preservation of the tape is desired by a party to pending litigation.

There is nothing in the section which specifically approves the department's practice of destroying the tapes in the absence of a subpoena; but use of the broad word "litigation," instead of criminal proceeding or the equivalent, for example, suggests the Legislature did not intend to impose a duty on police to follow the progress of all cases involving police dispatches. So interpreted, the statute would be unworkable. Civil cases are often filed in jurisdictions far from the scene of an accident and frequently much later than 100 days after the event; police cannot be expected to peruse registers of actions up and down the state or anticipate litigation that is but a glimmer in a civil attorney's eye.

Even the monitoring of local criminal cases originating in the same department would present enormous difficulties, particularly in larger jurisdictions. Those responsible for recycling tapes will usually be unaware if material on a particular one relates to a case still in litigation. In order to erase one day's tape, records of the disposition of hundreds of cases from speeding tickets to homicides might have to be checked, an obviously impractical chore. Also, unlike most evidence accumulated by police, dispatcher's tapes are rarely of courtroom value. Few contain probative matter admissible over a hearsay objection.

▉ *Hitch* does not require perfection in the preservation of evidence, only that where an agency intentionally but nonmaliciously destroys evidence, it demonstrate it has "established, enforced and attempted in good faith to adhere to rigorous and systematic procedures designed to preserve the [evidence] . . . ." (*People* v. *Hitch, supra,* 12 Cal.3d 641, 652-653.) To require police to track litigation would impose an enormous, if not impossible, burden. But it is little to ask of a litigant that he simply advise the department of the pendency of a matter in which the tape will be desired before the time runs. ▉ We believe a procedure which permits destruction of the tapes after they have been retained for the 100-day period, in the absence of some action by a party to a lawsuit to notify the department to preserve the tapes, complies with the statute and *Hitch.*

---

[1]The section appears to be a legislative response to an Attorney General's opinion which stated police tapes must be held for two years. (64 Ops.Cal.Atty.Gen. 435 (1981).)

Although the department undoubtedly requires too much in insisting on notice of the pending litigation in the form of a subpoena, this could have made no difference under the facts before us. Fowler was unaware the case had been filed and would have done nothing to preserve the tapes in any event.[2]

Accordingly, we have no need to reach the question of whether exclusion of evidence is appropriate for a violation of Government Code section 26202.6. We do note, however, the Legislature knows how to design a statute which provides that remedy when it so desires. (See, e.g., Pen. Code, §§ 632, subd. (d) and 626.11, Veh. Code, § 13353, subd. (a)(1), and cf. *People* v. *Brannon* (1973) 32 Cal.App.3d 971 [108 Cal.Rptr. 620].)

### III

█ Fowler's speedy trial claim is a more difficult problem, however. Contrary to the trial court's position, he made a sufficient prima facie showing of prejudice by proving the loss of the dispatcher's tape coupled with a plausible explanation of what he might have been able to prove if the tape were available. The court was apparently of the view that he failed to establish the tape would reveal a "stiffed-in" phone call from a Los Angeles policeman, but that cannot be the test. If Fowler could have proved *that*, he obviously would have been entitled to a dismissal without the aid of a speedy trial motion. The court's reasoning is circular: The motion was denied because the defendant could only "speculate" that evidence lost during an unexplained delay in the proceedings would have assisted him, when, of course, that was the very basis for the motion in the first place.

Once Fowler made his showing of prejudice, that evidence potentially favorable to him had concededly and deliberately been destroyed by police during a period of unexplained delay, the burden shifted to the prosecution to justify the delay. (*People* v. *Vanderburg* (1973) 32 Cal.App.3d 526, 531-532 [108 Cal.Rptr. 104].) The court should then have balanced prejudice against justification and ruled. (*Barker* v. *Wingo* (1972) 407 U.S. 514 [33 L.Ed.2d 101, 92 S.Ct. 2182]; *People* v. *Mitchell* (1972) 8 Cal.3d 164 [104 Cal.Rptr. 348, 501 P.2d 916].) The court apparently believed it to be remote that the tape would reveal a "stiffed-in" call. Fine. It would not have required much justification to counterbalance the erasure of the tape, perhaps. But that cannot change the fact the tape was erased—or relieve the court from undertaking the weighing process.

---

[2]*People* v. *O'Hearn* (1983) 142 Cal.App.3d 566 [191 Cal.Rptr. 481], upon which Fowler heavily relies, is not on point. The officers there did not comply with a statute concerning the preservation of evidence in narcotics cases; here we find sufficient compliance with the applicable statutory mandate.

The prosecution's major contention has been that the dispatcher's information would have been immaterial to Fowler's motion to suppress. It argues the arresting officer could have stopped him at gunpoint in his own front yard anyway, simply based on his observation of Fowler walking from his house to the motorhome, and could have done so legally under *Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]. We find the notion so obviously spurious as to be unworthy of discussion.

We *are* somewhat concerned with a point the prosecution did not raise, however: the temporal brevity of the delay in this case compared to the inordinate time periods reflected in most of the reported decisions. The delay in *Scherling* v. *Superior Court* (1978) 22 Cal.3d 493 [149 Cal.Rptr. 957, 585 P.2d 219], for example, was 10 *years*—and the Supreme Court found no abuse of discretion in denying the speedy trial motion. In another leading case, *People* v. *Archerd* (1970) 3 Cal.3d 615 [91 Cal.Rptr. 397, 477 P.2d 421], the delay was ten years as to one defendant and five as to another; again, denial of the motion was upheld. *Sykes* v. *Superior Court* (1973) 9 Cal.3d 83 [106 Cal.Rptr. 786, 507 P.2d 90] involved a seven-and-one-half month delay; *People* v. *Mitchell, supra,* 8 Cal.3d 164, thirteen months; *Rice* v. *Superior Court* (1975) 49 Cal.App.3d 200 [122 Cal.Rptr. 389], eleven months. In the cases cited by Fowler, the respective delays are as follows: *Barker* v. *Wingo, supra,* 407 U.S. 514, postindictment delay of over five years upheld; *Jones* v. *Superior Court* (1970) 3 Cal.3d 734 [91 Cal.Rptr. 578, 478 P.2d 10], two months from crime to complaint, plus more than a year and a half from complaint to arrest, a total of some twenty months; *Penny* v. *Superior Court* (1972) 28 Cal.App.3d 941 [105 Cal.Rptr. 162], six years.

In *People* v. *Kiihoa* (1960) 53 Cal.2d 748 [3 Cal.Rptr. 1, 349 P.2d 673] and *People* v. *Cave* (1978) 81 Cal.App.3d 957 [147 Cal.Rptr. 371], however, defendants were accorded dismissals where the prosecution lost material informants after delays of about five months; and *Cave* specifically utilized a speedy trial analysis. We concur that the actual time of the delay in cases such as this is not the critical issue. Rather, where there is an unjustified delay during the period police are under an obligation to maintain evidence, witnesses, or tabs on witnesses, the relative length of the delay only relates to the issue of justification.

IV

In Fowler's attack on the ruling on his motion to suppress based on the so-called *Harvey-Whiteley* rule (*Whiteley* v. *Warden, supra,* 401 U.S. 560; *People* v. *Harvey, supra,* 156 Cal.App.2d 516), he correctly notes the officers had insufficient basis for the gunpoint detention in this case absent the

information received in the anonymous phone call. Nevertheless, his objection to the arresting officer's testimony describing the burglary report was overruled by the trial court in the hearing on the motion to suppress. Earlier the same day, however, the court heard testimony during the *Hitch*-speedy trial motion from the dispatcher concerning the record she made of the call. This latter evidence technically should have been offered anew at the second hearing, in the absence of a stipulation that it could be so considered. And it would have been more than adequate to satisfy the purpose of the rule, which is to assure that the arresting officer cannot manufacture his own probable cause.

The error was purely technical, however, and there is no reason to direct the superior court to rehear the motion. If the probable cause *was* manufactured in this case, we know, and the trial court knew, it was not by the arresting officer. Thus, the petition brought on this issue, while a raving beauty on first appearances, is revealed in truth to be a homely crone. Consequently, we exercise our discretion to decline the peremptory writ brought from the denial of the motion to suppress.

The alternative writs are discharged. Let a peremptory writ of mandate issue directing the superior court to rehear Fowler's speedy trial motion and to grant it unless the court finds the prosecution's justification, if any, for the delay outweighs the prejudice to him.

Wallin, Acting P. J., and Sonenshine, J., concurred.