[No. B147607. Second Dist., Div. One. May 25, 2001.]

LOTTIE NELSON et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
COUNTY OF LOS ANGELES et al., Real Parties in Interest.

**COUNSEL**

Leo James Terrell for Petitioners.

No appearance for Respondent.

Lloyd W. Pellman, County Counsel, Dennis M. Gonzales, Principal Deputy County Counsel; Greines, Martin, Stein & Richland, Timothy T. Coates and Alan Diamond for Real Parties in Interest.

**OPINION**

**VOGEL (Miriam A.), J.**—*Fowler v. Superior Court* (1984) 162 Cal.App.3d 215 [208 Cal.Rptr. 408], a criminal case, holds that a county's obligation to preserve "recordings of telephone and radio communications" for more than 100 days arises only when the county has actual notice that such recordings "are evidence in any claim filed or any pending litigation." (Gov. Code, § 26202.6.)[1] In this civil case, we hold that a government tort claim filed with the county in conformance with section 911.2 constitutes actual notice to the county that a "claim" is pending within the meaning of section 26202.6.

FACTS

On September 13, 1998, Dwayne Nelson was arrested by Deputies Steven Trammell and David Porter of the Los Angeles County Sheriff's Department (who were responding to "several 911 calls" about "a man with a gun"). According to the deputies, Mr. Nelson was placed in a patrol car, then "removed" from the vehicle because he was kicking and banging at the doors and windows. To keep Mr. Nelson from injuring himself or a deputy and to prevent damage to the vehicle, the deputies placed Mr. Nelson face-down on the ground and applied a Total Appendage Restraint Procedure (TARP or, as it is sometimes called, a "Ripp Hobble" restraint). Mr. Nelson stopped breathing at the scene, and was transported by ambulance to a hospital, where he was declared dead on arrival. There were numerous radio calls and computer transmissions from the deputies at the scene to and from their supervisors and other deputies, and the entire "TARPing" procedure was videotaped.

On October 7, 1998, Lottie Nelson (Dwayne Nelson's mother) filed a claim for damages with the County of Los Angeles in which she asserted

---

[1]Undesignated section references are to the Government Code.

that the County was responsible for her son's death. (§ 911.2.) On February 11, 1999, Wallace Nelson (Dwayne Nelson's father) filed a similar claim with the County. On July 19, Lottie Nelson and Wallace Nelson, individually and as the administrators of Dwayne Nelson's estate (but represented by separate counsel), sued the County of Los Angeles and the Los Angeles County Sheriff's Department for wrongful death damages (and by later amendments added several individuals as defendants).

In the fall of 1999, Plaintiffs served on the County a request for the production of documents in which they asked for the "911 calls" to which the deputies responded, all "radio transmissions" from the Sheriff's Department vehicles, all "audio recordings," all "computer terminal transmissions from all Sheriff's Department vehicles," all "mobile display terminal records" from the Sheriff's Department's vehicles, all "mobile digital terminal printouts of all communications," and all "administrative messages and daily work shift messages" from the vehicles. The County produced the daily worksheets and administrative messages, but no mobile digital or "voice communication systems" or "audio communications."

In September 2000, after Plaintiffs learned (at the deposition of the deputy who had videotaped Dwayne Nelson on September 13, 1998) that the County had not produced "certain items which were requested in the first round of discovery," they wrote to the lawyer representing both the County and the Sheriff's Department, demanding the production of transcripts of witness interviews; a copy "of the microcassette made . . . on the night of Dwayne Nelson's death"; all "911 dispatch tapes" for calls made for medical assistance for Dwayne Nelson; certain daily activity logs; and all videotapes describing the Sheriff's Department's policies and practices regarding the use of a Ripp Hobble.[2]

In late September, defense counsel produced complete copies of all interview tapes and transcripts, the requested microcassette, and the daily worksheets—but explained, in an accompanying letter, that "the radio transmissions [were] no longer available" but that "the audio portion of the videotape contain[ed] the request for the paramedics and the dispatcher's acknowledgement thereof." The letter was supported by a declaration from a Sheriff's Department Communication Operator explaining that a search had been made for tapes of the radio communications but none had been found—because section "26202.6 allows for the destruction or reuse of

---

[2] Plaintiffs learned about the videotape made of Dwayne Nelson's TARPing because it was mentioned in the autopsy report, and the videotape was turned over to Plaintiffs' lawyer at some earlier time—but the copy provided was incomplete. A nine-second segment was for some reason omitted. Ultimately, a complete copy was turned over.

telephone and radio communications after 100 days. The Los Angeles County Board of Supervisors established a policy of retaining the tapes for 120 days."

In January 2001 (about two weeks after the County and the Sheriff's Department filed a motion for summary judgment and about six weeks before trial was set to begin), Plaintiffs moved for sanctions against the County and the Sheriff's Department on the ground that they had in bad faith destroyed the mobile digital and voice recordings made at the time of Dwayne Nelson's arrest and death. Plaintiffs asked the court for orders striking the answer filed by the County and the Sheriff's Department and imposing issue and evidentiary sanctions, for jury instructions to the effect that the recordings had been destroyed notwithstanding a legal requirement to maintain them pending resolution of this litigation, and for monetary sanctions.

The County and the Sheriff's Department opposed the motion on the ground that they were legally entitled to destroy "recordings of telephone and radio communications." Relying on section 26202.6—which authorizes the destruction of "recordings of telephone and radio communications" after 100 days unless the recordings and communications "are evidence in any claim filed or any pending litigation"—as interpreted by *Fowler v. Superior Court, supra,* 162 Cal.App.3d 215, to mean that a duty to preserve such evidence does not arise absent *actual notice* of a claim or pending litigation, the trial court denied Plaintiffs' motion for sanctions.

Plaintiffs, in turn, filed a petition for a writ of mandate in which they asked us to find that Lottie Nelson's claim (filed 28 days after Dwayne Nelson's death) was sufficient to constitute a "claim" within the meaning of section 26202.6, and to trigger the County's obligation to preserve the recordings beyond 100 days. We issued an order to show cause and set the matter for hearing.

### DISCUSSION

 Plaintiffs contend Lottie Nelson's government tort claim is a "claim" within the meaning of section 26202.6, and that the County and the Sheriff's Department were therefore required by law to preserve the recordings of telephone and radio communications involving the Dwayne Nelson "incident." We agree.

### A.

Section 26202.6 provides: "Notwithstanding [other provisions that do not apply in this case], the head of a department of a city, county, or city and

county, public safety communications center, or the head of a special district after 100 days may destroy recordings of telephone and radio communications maintained by the department or the special district. Such destruction shall be approved by the legislative body and the written consent of the agency attorney shall be obtained. *In the event that such recordings are evidence in any claim filed or any pending litigation, such recordings shall be preserved until pending litigation is resolved.*

"For purposes of this section, 'recordings of telephone and radio communications' means the routine daily taping and recording of telephone communications to and from a city, county, city and county, or special district department and all radio communications relating to the operations of such departments or special district." (Italics added.)[3]

## B.

In the 20 years since section 26202.6 was enacted (Stats. 1981, ch. 1174, § 1, p. 4731), it has been the subject of only one published opinion, the Fourth District's 1984 decision in *Fowler v. Superior Court, supra,* 162 Cal.App.3d 215, a criminal case. In *Fowler,* the defendant was arrested (on January 16, 1983) after the police responded to an anonymous report of a burglary. Fowler was released on bail the next day (January 17); after twice returning to court as ordered (on February 17 and March 3), he was told that no criminal complaint had been filed and he was not ordered to return. But the information he was given was wrong—and a complaint had been "issued" on February 16 (and filed on February 28), in which he was charged with possession of a firearm by an ex-felon and possession of heroin. A notice to appear was returned as undeliverable, and a bench warrant was issued on May 5. He was arrested on May 19. (*Id.* at p. 217.)

In the trial court, Fowler moved to dismiss on the ground that the police had failed to preserve the tape recording of the dispatcher's conversation with the unknown caller who reported the burglary. In opposition, the prosecutor explained that, as authorized by section 26202.6, the recordings made by the Huntington Beach Police Department had been erased or reused on the 101st day after Fowler's original arrest. The trial court denied Fowler's motion, and (as to this issue) Division Three of the Fourth District thereafter denied his petition for extraordinary relief. (*Fowler v. Superior Court, supra,* 162 Cal.App.3d at pp. 218, 222.) As relevant, this is *Fowler's* analysis:

---

[3]Section 26202.6 "appears to be a legislative response to an Attorney General's opinion which stated police tapes must be held for two years. (64 Ops.Cal.Atty.Gen. 435 (1981).)" (*Fowler v. Superior Court, supra,* 162 Cal.App.3d at p. 219, fn. 1.)

". . . Fowler claims the destruction of the tape after the criminal complaint was filed violated . . . section 26202.6 and requires dismissal of the charges against him. . . . Read literally, the statute was violated here because litigation in the form of a felony criminal complaint was pending against Fowler when the tape was erased on the 101st day after his arrest—although he had yet to be rearrested on the bench warrant. *But we believe the statute must be reasonably construed to permit destruction in the absence of actual notice that preservation of the tape is desired by a party to pending litigation.*

"There is nothing in the section which specifically approves the department's practice of destroying the tapes in the absence of a subpoena; but use of the broad word 'litigation,' instead of criminal proceeding or the equivalent, for example, suggests the Legislature did not intend to impose a duty on police to follow the progress of all cases involving police dispatches. So interpreted, the statute would be unworkable. *Civil cases are often filed in jurisdictions far from the scene of an accident and frequently much later than 100 days after the event; police cannot be expected to peruse registers of actions up and down the state or anticipate litigation that is but a glimmer in a civil attorney's eye.*

"Even the monitoring of local criminal cases originating in the same department would present enormous difficulties, particularly in larger jurisdictions. Those responsible for recycling tapes will usually be unaware if material on a particular one relates to a case still in litigation. In order to erase one day's tape, records of the disposition of hundreds of cases from speeding tickets to homicides might have to be checked, an obviously impractical chore. Also, unlike most evidence accumulated by police, dispatcher's tapes are rarely of courtroom value. Few contain probative matter admissible over a hearsay objection.

". . . To require police to track litigation would impose an enormous, if not impossible, burden. But it is little to ask of a litigant that he simply advise the department of the pendency of a matter in which the tape will be desired before the time runs. We believe a procedure which permits destruction of the tapes after they have been retained for the 100-day period, in the absence of some action by a party to a lawsuit to notify the department to preserve the tapes, complies with the statute . . . .

"Although the department undoubtedly requires too much in insisting on notice of the pending litigation in the form of a subpoena, this could have made no difference under the facts before us. Fowler was unaware the case had been filed and would have done nothing to preserve the tapes in any

event. [Fn. omitted.] [¶] Accordingly, we have no need to reach the question of whether exclusion of evidence is appropriate for a violation of . . . section 26202.6. We do note, however, the Legislature knows how to design a statute which provides that remedy when it so desires." (*Fowler v. Superior Court, supra,* 162 Cal.App.3d at pp. 218-220, italics added.)

## C.

We do not question the reasonableness of *Fowler* in the context in which it was decided, but we do not agree with the trial court's application of *Fowler*'s analysis to a civil action against a governmental agency where a government tort claim was filed.

As *Fowler* concedes, the statute, "[r]ead literally," is violated if tapes are destroyed when litigation is pending. (*Fowler v. Superior Court, supra,* 162 Cal.App.3d at p. 219.) More precisely, the statute, "read literally," is violated if the destroyed tapes "are evidence in any claim filed or any pending litigation." (§ 26202.6.) ■ Whether (on the 100th day) there is litigation (as in *Fowler*) or a government tort claim (as in our case), we agree with *Fowler* that "the statute must be reasonably construed to permit destruction in the absence of actual notice that preservation of the tape is desired by a party to pending litigation." (*Fowler v. Superior Court, supra,* 162 Cal.App.3d at p. 219.) The point overlooked in *Fowler*, in its suggestion that "police cannot be expected to peruse registers of actions up and down the state or anticipate litigation that is but a glimmer in a civil attorney's eye" (*ibid.*), is that virtually all civil litigation involving a police department (and the city or county in which it is located) must be preceded by compliance with the claim filing statutes, section 900 et seq.

Subject to the timely filing (in the proper form and in the proper place) of a written claim, all state and local public entities in California may be liable in tort to the extent declared by statute. (§§ 815, 905, 905.2, 911.2.) "The claims requirement has a two-fold purpose: (a) the entity should have an opportunity to investigate promptly while the evidence and witnesses are available; (b) the entity, having obtained full information, should have an opportunity to settle meritorious claims without litigation." (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 223, pp. 291-292.)

Twenty-eight days after Dwayne Nelson died, his mother filed a claim with the County of Los Angeles—and neither the County nor the Sheriff's Department suggests her government tort claim was untimely or on the

wrong form or filed with the wrong agency. An attachment to the claim gives unequivocal notice to the County of Lottie Nelson's belief that Dwayne Nelson's death "on September 13, 1998," was caused "by Los Angeles County Sheriff's Department deputies, acting under color of authority. . . ." Lottie Nelson described her damages as "[l]oss of son, economic losses, emotional and mental injuries, all subject to proof," and all arising from the deputies' allegedly tortious and unconstitutional conduct.

Since the fundamental purpose of the government tort claim filing statutes (§ 900 et seq.) is to put the government agency on notice of its need to investigate *while the evidence and witnesses are available,* it follows necessarily that Lottie Nelson's "claim" constituted actual notice to the County of a "claim filed" and of the need to preserve recordings related to that claim as required by section 26202.6.[4] The legislative history supports this result. When section 26202.6 was enacted, the claim filing period under section 911.2 was only 100 days for claims based on death, bodily injury, and personal property damage (Stats. 1963, ch. 1715, § 1, p. 3372; amended Stats. 1987, ch. 1201, § 18, p. 4281; Stats. 1987, ch. 1208, § 3, p. 4306 ) and it appears that the 100-day preservation period required by section 26202.6 was based on the assumption that a "claim," if there was one, would be filed within that 100-day period. As a letter to the Governor urging his veto explained, "civil lawsuits [alleging civil rights violations arising out of police misconduct] may be filed at any time up to the three-year federal statute of limitations; the failure to file a 'hundred-day claim' does not bar a plaintiff from suing under federal civil rights statutes . . . ." (Letter from Robert Berke, Center for Law in the Public Interest, to Governor Edmund G. Brown, Jr., Sept. 24, 1981.)[5]

[4]Since Lottie Nelson filed her claim well within the 100-day period during which police recordings must be preserved (§ 26202.6), we need not resolve the obvious conflict that would arise where a government tort claim was timely filed under section 911.2 (that is, within six months for a claim based on death, bodily injury, or damage to personal property, or within one year for other causes of action such as damage to real property) but beyond the 100-day period specified in section 26202.6.

[5]As requested by the County and the Sheriff's Department, we have judicially noticed documents copied from the Legislature's official files on section 26202.6. (Evid. Code, § 459; *Galanty v. Paul Revere Life Ins. Co.* (2000) 23 Cal.4th 368, 381, fn. 24 [97 Cal.Rptr.2d 67, 1 P.3d 658]; *Maryland Casualty Co. v. Andreini & Co.* (2000) 81 Cal.App.4th 1413, 1420-1426 [97 Cal.Rptr.2d 752]; *Zabetian v. Medical Board* (2000) 80 Cal.App.4th 462, 467-468 [94 Cal.Rptr.2d 917].) In the interests of full disclosure, we note that the letter quoted in the text goes on to opine that these "hundred day claims" "may not in any event provide "sufficiently specific notice of the need for preservation of these tapes to permit prompt identification and preservation of the relevant tapes prior to their destruction." While that might be true of a claim less specific than the one filed by Lottie Nelson, it is not true in this case. Had the County or the Sheriff's Department viewed her government tort claim as one that triggered a retention obligation under section 26202.6, we are confident that the relevant recordings

■ In short, we believe the Legislature intended that, in civil cases, a "claim" filed in compliance with section 911.2 constitutes a "claim" within the meaning of section 26202.6, and triggers the obligation to preserve the recordings covered by section 26202.6 until the "claim filed or any pending litigation" is resolved.

## D.

To avoid the conclusion just stated, the County and the Sheriff's Department contend the result we reach is inconsistent with section 26202.6 because, in their words, the "statute does not provide that the head of a department is presumed to know that a claim has been filed or litigation is pending or what *'recordings are evidence'* in such claim or litigation." Conveniently ignored by the County and the Sheriff's Department is the concomitant fact that the statute does not require any notice at all—it merely says that the recordings are not to be destroyed "[i]n the event that such recordings are evidence in any claim filed or any pending litigation . . . ." Since the statute is directed at cities, counties, and public safety departments—all government agencies—and since the Legislature is fully aware that, in most instances, a "claim" must be filed with such agencies as a condition precedent to any lawsuit, it follows ineluctably that the Legislature intended a claim filed pursuant to section 911.2 to suffice as notice of a "claim" within the meaning of section 26202.6. (*Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1245 [82 Cal.Rptr.2d 85, 970 P.2d 872].)

In their written opposition to the petition now before us, the County and the Sheriff's Department claimed the notice given by Lottie Nelson's government tort claim (or any government tort claim) is, at best, "constructive notice" of a "claim" within the meaning of section 26202.6. Not so. It is actual notice, not constructive notice. ■ "Actual notice" is "[n]otice given directly to, or received personally by, a party." (Black's Law Dict. (7th ed. 1999) p. 1087.) "Constructive notice" is "[n]otice arising by presumption of law from the existence of facts and circumstances that a party had a duty to take notice of, such as a registered deed or a pending lawsuit; notice presumed by law to have been acquired by a person and thus imputed to that person." (*Id.* at p. 1088.) At oral argument, counsel clarified that the "constructive notice" issue was advanced on behalf of the Sheriff's Department only, on the theory that actual notice to the County would (at most) constitute constructive notice to the Sheriff's Department. As clarified, the point still lacks merit. ■ Quite plainly, notice to the County is notice to

could have been identified. (See also letter from Beth J. Meador and Brent A. Barnhart, American Civil Liberties Union, to Governor Edmund G. Brown, Jr., Sept. 22, 1981.)

the Sheriff's Department. The County is the ultimately responsible agency in this case, a fact necessarily conceded by the Board of Supervisors when it increased the length of time during which recordings must be retained (from 100 to 120 days). (L.A. County Charter, art. III, § 11(6).) And while it is true, as the County says, that section 26202.6 gives "the head of a department of a city, county, or city and county, public safety communications center, or the head of a special district" the right to destroy the recordings after 100 days, there is nothing in the statute to support the assertion that specific notice of a need to retain a recording must be given to one of those persons.

## E.

It does not follow that we agree with the remedy proposed by Plaintiffs. Although we have concluded that a government tort claim constitutes "actual notice" within the meaning of *Fowler v. Superior Court, supra,* 162 Cal.App.3d 215, we are not prepared to say that the County's contrary conclusion was per se unreasonable or in bad faith. On the other hand, Plaintiffs have raised the *possibility* that the Sheriff's Department did not destroy the recordings until after Plaintiffs' lawsuit was filed and formal discovery was underway. On the record before us, there is no way to determine whether Plaintiffs' position has merit, and we express no view in that regard. Instead, we remand the matter of sanctions to the trial court with directions to conduct further proceedings to determine whether, on the particular facts of this case, sanctions ought to be imposed and, if so, to determine the appropriate sanction.

To the County, we suggest that it act with deliberate speed to develop a system to ensure that, in the future, the filing of a government tort claim in conformance with section 911.2 triggers a notice to the appropriate law enforcement agency to preserve relevant recordings of telephone and radio communications until the dispute described in the claim is resolved. There is nothing in the record before us to suggest that this approach will impose an unreasonable burden on any governmental agency. If it does, that problem will have to be addressed by the Legislature.

## DISPOSITION

The petition is granted insofar as it asks for a determination that a claim filed with the County in conformance with Government Code section 911.2 constitutes actual notice to the County and the Sheriff's Department of a

"claim" within the meaning of Government Code section 26202.6; with regard to the issue of sanctions, the cause is remanded to the trial court with directions to conduct the further proceedings described in this opinion. The parties are to pay their own costs of these writ proceedings, subject to reallocation by the trial court based upon its determination of the sanction issue.

Ortega, Acting P. J., and Mallano, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied August 15, 2001. George C. J., and Werdegar, J., did not participate therein.