166 Cal.App.4th 375 (2008)
Estate of JOSEPH CLEMENTI, JR., Deceased.
SALVATORE CHIMENTI et al., Contestants and Appellants,
v.
RICHARD E. WEISZ et al., Objectors and Respondents.
No. G039223.
Court of Appeals of California, Fourth District, Division Three.
August 27, 2008.
*377 Langston Williams and Gerold G. Williams for Contestants and Appellants.
Glicker & Associates and Brian Glicker for Objector and Respondent Richard E. Weisz.
Edmund G. Brown, Jr., Attorney General, Belinda J. Johns, Assistant Attorney General, and James M. Cordi, Deputy Attorney General, for Objector and Respondent Attorney General of the State of California.

OPINION
FYBEL, J.

INTRODUCTION
The will of Joseph Clementi, Jr., was admitted to probate. He willed assets to his siblings, the drafter of his will, and to a charitable foundation or trust to *378 be run by the will's drafter. Clementi's nephew and niece, Salvatore Chimenti and Adeline DiAmbrosio (appellants) filed a petition to revoke probate. The petition was denied, and this appeal followed. We affirm.
Probate Code section 21350 generally prohibits donative transfers to the drafters of wills and their relatives. (All further statutory references are to the Probate Code.) However, section 21351, subdivision (i) creates an exemption from section 21350 if "[t]he transfer is made by an instrument executed by a nonresident of California who was not a resident at the time the instrument was executed, and that was not signed within California." (§ 21351, subd. (i).) Clementi was not a California resident when he signed his will in Pennsylvania, but was a California resident at the time of his death.
We hold section 21351, subdivision (i) does not require that the transferor be a nonresident of California at the time of death. Therefore, the exemption in section 21351, subdivision (i) applies in this case because Clementi's will was signed in Pennsylvania at a time when Clementi was not a resident of California.
Additionally, we conclude Clementi manifested a sufficient intent to create a charitable trust through his will, although his will does not identify a specific charity. His stated intent to "give the balance of my assets to a charitable foundation or trust" is sufficient.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
Clementi died on February 13, 2001, while residing in Orange County, California. Clementi's will, dated March 4, 1999, was admitted to probate by the Orange County Superior Court on December 2, 2004.
At the time he executed his will, Clementi was living in Philadelphia, Pennsylvania. Richard E. Weisz was Clementi's accountant, and apparently his only friend. Weisz suggested to Clementi that he prepare a will, and further suggested that an attorney draft the will. Clementi asked Weisz to create the will instead, and Weisz agreed. Weisz wrote out Clementi's will by hand, at Clementi's request. Weisz read the will to Clementi, who signed it in the presence of two witnesses, who also signed the will. The will reads as follows:
"1. I give $250,000 to each of my brother and sister [sic].[[1]]
*379 "2. I give $100,000 to my friend, accountant and benefactor, Richard E. Weisz.
"3. I give the balance of my assets to a charitable foundation or trust in my name to be run by Richard Weisz. If Richard Weisz is not alive when I die, then I appoint his son, Frank Weisz[,] to run my charitable foundation or trust.
"4. I appoint Richard Weisz to administer my estate. If he is not alive when I die, then I appoint his son Frank Weisz to administer my estate."
Sometime in 2000, Clementi's brother Mitchell Clement moved Clementi to California. At the time of Clementi's death in 2001, his estate was worth in excess of $3 million.
In December 2005, appellants filed a petition for revocation of the probate of the will, for damages for elder abuse and negligence, and for rescission, restitution, and an award of attorney fees.[2] A bench trial was conducted, and the probate court issued a statement of decision in February 2007, finding Clementi's probated will was valid, and denying the petition in its entirety. Judgment was entered, and appellants timely appealed.

DISCUSSION

I. STANDARDS OF REVIEW

Where, as here, the probate court issues a statement of decision, and the parties fail to file any objections, we will infer that the probate court made all necessary implied factual findings to support its judgment. (In re Marriage of Arceneaux (1990) 51 Cal.3d 1130, 1133-1134 [275 Cal.Rptr. 797, 800 P.2d 1227].) We next inquire whether substantial evidence supports those findings. (Fladeboe v. American Isuzu Motors Inc. (2007) 150 Cal.App.4th 42, 48 [58 Cal.Rptr.3d 225].)
(1) To the extent the appeal involves interpretation of a statute, we review the matter de novo. (Kavanaugh v. West Sonoma County Union High School Dist. (2003) 29 Cal.4th 911, 916 [129 Cal.Rptr.2d 811, 62 P.3d 54].) "In construing a statute, our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute. [Citation.] We begin with *380 the language of the statute, giving the words their usual and ordinary meaning. [Citation.] The language must be construed `in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose."' [Citation.] In other words, `"we do not construe statutes in isolation, but rather read every statute `with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]"' [Citation.] If the statutory terms are ambiguous, we may examine extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we choose the construction that comports most closely with the Legislature's apparent intent, endeavoring to promote rather than defeat the statute's general purpose, and avoiding a construction that would lead to absurd consequences. [Citation.]" (Smith v. Superior Court (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218].)

II. THE PROBATE COURT CORRECTLY DETERMINED THE EXCEPTION TO SECTION 21350 CONTAINED IN SECTION 21351, SUBDIVISION (I) APPLIES IN THIS CASE.

A. Analysis of the statute's language

Section 21350, subdivision (a) provides, in relevant part, as follows: "Except as provided in Section 21351, no provision, or provisions, of any instrument shall be valid to make any donative transfer to any of the following: [¶] (1) The person who drafted the instrument. [¶] (2) A person who is related by blood or marriage to, is a domestic partner of, is a cohabitant with, or is an employee of, the person who drafted the instrument. [¶] . . . [¶] (4) Any person who has a fiduciary relationship with the transferor, including, but not limited to, a conservator or trustee, who transcribes the instrument or causes it to be transcribed. [¶] (5) A person who is related by blood or marriage to, is a domestic partner of, is a cohabitant with, or is an employee of a person who is described in paragraph (4)." Appellants contend the bequest of $100,000 to Weisz and the remuneration that would result to Weisz or his son from the position of running the charitable foundation or trust are donative transfers prohibited by section 21350.
*381 (2) Section 21351, subdivision (i) creates an exemption from section 21350 if "[t]he transfer is made by an instrument executed by a nonresident of California who was not a resident at the time the instrument was executed, and that was not signed within California." (§ 21351, subd. (i).) Appellants argue section 21351, subdivision (i) does not apply if the decedent was a resident of California at the time of death. They argue that the use of two separate references in section 21351, subdivision (i) to nonresidence means that residence must be evaluated at two separate timesat the time the instrument is executed and at the time of death. This interpretation is bolstered by the language of section 21351, subdivision (e)(3), which permits the probate court to determine whether an otherwise prohibited transfer was not the product of fraud, menace, duress, or undue influence if the transfer was included in "[a]ny instrument executed by a resident of California who was not a resident at the time the instrument was executed." As our Supreme Court has noted, "[w]here different words or phrases are used in the same connection in different parts of a statute, it is presumed the Legislature intended a different meaning. [Citation.]" (Briggs v. Eden Council for Hope & Opportunity (1999) 19 Cal.4th 1106, 1117 [81 Cal.Rptr.2d 471, 969 P.2d 564].) If both references to nonresidence refer to nonresidence at the time the instrument is signed, appellants argue, then one of them is surplusage, and we must avoid interpretations of statutes that render their terms meaningless. (People v. Hudson (2006) 38 Cal.4th 1002, 1010 [44 Cal.Rptr.3d 632, 136 P.3d 168].)
The Attorney General argues that if the Legislature had intended that section 21351, subdivision (i) applies only if the decedent was not a California resident at the time of death, it would have said so expressly in the statute. This interpretation finds support in Witkin's treatise on California law: "The prohibition [on transfers under section 21350] does not apply to a transfer made in an instrument executed out of state by a person who was not a California resident at the time of execution. [Citation.]" (14 Witkin, Summary of Cal. Law (10th ed. 2005) Wills and Probate, § 304, p. 391.) Witkin cites no authority supporting this statement, except the statute itself.
The Attorney General also argues that because sections 21350 and 21351 apply to all donative transfers (Rice v. Clark (2002) 28 Cal.4th 89, 98 [120 Cal.Rptr.2d 522, 47 P.3d 300]) and some donative transfers such as inter vivos trusts and grant deeds are effective upon execution, a requirement that the transferor be a nonresident upon his or her death cannot reasonably be read into section 21351.

*382 B. Analysis of the statute's legislative history and purposes

Because the language of section 21351, subdivision (i) is ambiguous for the reasons explained, ante, we turn to the legislative history of that subdivision to assist in determining the Legislature's intent. (Smith v. Superior Court, supra, 39 Cal.4th at p. 83.)
Subdivision (i) was added to section 21351 in 2002. (Stats. 2002, ch. 412, § 1.) As originally introduced, section 21351, subdivision (i) would have read, "[t]he transfer is made by an instrument executed by a nonresident of California that was not signed within California." (Legis. Counsel's Dig., Sen. Bill No. 1575 (2001-2002 Reg. Sess.) as amended Apr. 1, 2002.) An analysis prepared for the Senate Judiciary Committee noted, "SHOULD THE PROVISION SPECIFY THAT THE TRANSFEROR WAS A NONRESIDENT AT THE TIME OF EXECUTION OF THE INSTRUMENT? [¶] While the sponsor's explanation for desiring this change in the law is clear, i.e., that transfers made by persons who were nonresidents at the time of execution of the instrument and who signed the instrument outside of California should be a categorical exemption from the rule, the rationale doesn't make sense when coupled with the removal of the requirement that the court make a determination that no fraud was involved." (Sen. Com. on Judiciary, Analysis of Sen. Bill. No. 1575 (2001-2002 Reg. Sess.) as amended Apr. 1, 2002, p. 8.) The language of the bill was then amended to add the language "who was not a resident at the time the instrument was executed." (Legis. Counsel's Dig., Sen. Bill No. 1575 (2001-2002 Reg. Sess.) as amended Apr. 9, 2002, italics omitted.) The language that creates the ambiguity in section 21351, subdivision (i) therefore appears to have been added to the statute in response to a Senate committee suggestion that it expressly state the transferor was a nonresident of California at the time the document in question was executed.
Other parts of the legislative history also show that the Legislature's purpose in enacting section 21351, subdivision (i) was to exempt from section 21350 transfers made through documents executed when the transferor was a nonresident of California, without consideration to the residence of the transferor at the time of his or her death. The Senate Judiciary Committee analysis of the bill reads, in relevant part, as follows: "Under current law, a transfer to a prohibited transferee made by a person who was not a resident of the state at the time the instrument was executed would be exempt from the rule if a court determined that the transfer was made without fraud, duress, menace or undue influence. [¶] This bill would delete this exemption and *383 create a new provision that would exempt from the rule a transfer made by an instrument executed by a nonresident of the state and that was not signed in California, eliminating in this process a court determination that no fraud, duress, menace or undue influence was involved." (Sen. Com. on Judiciary, Analysis of Sen. Bill. No. 1575 (2001-2002 Reg. Sess.) as amended Apr. 1, 2002, p. 7.)
The Assembly Judiciary Committee noted the same legislative intent behind the addition of subdivision (i) to section 21351: "Under existing law, an instrument executed by a person who was not a resident of California at the time of execution, may be exempted from the prohibited transfer rule if the court determines that the transfer was not the product of fraud[,] menace, duress, or undue influence. Under S[enate] B[ill No.] 1575, the instrument may be exempted without a court determination if it was executed by a nonresident of California who was a nonresident at the time of execution, and the instrument was not signed within California. This provides a categorical exemption for instruments by nonresidents and signed outside of the state." (Assem. Com on Judiciary, Analysis of Sen. Bill No. 1575 (2001-2002 Reg. Sess.) as amended Apr. 9, 2002, p. 5.)
This analysis of the legislative history demonstrates that the legislative intent in enacting section 21351, subdivision (i) was to exempt from the reach of section 21350 donative transfers in instruments executed outside the State of California by persons who were not residents of California at the time of execution of the instrument. Nowhere in the legislative history is there any reference to a legislative intent that the exemption apply only if the transferor was also a nonresident at the time of his or her death. The language "who was not a resident at the time the instrument was executed" was added to the statute in response to a Senate committee suggestion that the statute specify the transferor be a nonresident of California at the time the instrument was executed.

C. Conclusion

(3) Based on our analysis of the statutes, their purpose, and uniform legislative history, we hold section 21351, subdivision (i) exempts from section 21350 donative transfers in instruments executed outside the State of California when the transferor was a nonresident of California at the time the instrument was signed, whether or not the transferor later becomes a resident of California. (4) In this case, Clementi was a nonresident of California *384 when he signed his will in Pennsylvania. Even though Clementi was a resident of California at the time of his death, section 21351, subdivision (i) exempts his will from the provisions of section 21350.

III. THE PROBATE COURT DID NOT ERR IN PLACING THE BURDEN OF PROOF ON APPELLANTS.

(5) Appellants next argue the probate court erred by placing the burden of proof on them, rather than on Weisz. Section 21351, subdivision (d) provides that, to avoid the prohibited transfer rule of section 21350, the transferee must prove by clear and convincing evidence the transfer was not the product of fraud, menace, duress, or undue influence. This is a statutory shift of the burden of proof, which in the typical will contest case falls on the contestant. (Rice v. Clark, supra, 28 Cal.4th at pp. 96-97; Osornio v. Weingarten (2004) 124 Cal.App.4th 304, 318 [21 Cal.Rptr.3d 246].)
However, as explained ante, Clementi's will is exempted from section 21350. The probate court correctly placed the burden of proof on appellants to prove by clear and convincing evidence that the gift to Weisz was the product of undue influence. (Estate of Truckenmiller (1979) 97 Cal.App.3d 326, 334 [158 Cal.Rptr. 699] [in standard will contest, clear and convincing proof was required to establish undue influence overcame testator's free will].) Appellants do not argue that substantial evidence did not support the probate court's finding that they failed to prove undue influence by clear and convincing evidence.
The probate court found that appellants were not aided by the presumption of undue influence because Weisz did not unduly profit from the gift in the will. Appellants do not challenge this finding on appeal.

IV. THE RESIDUARY CHARITABLE TRUST COULD NOT VIOLATE SECTION 21350.

Appellants next argue the residuary charitable trust violates section 21350, subdivision (a)(1) and (2), because it places control of the residue in the hands of the drafter of the will or his son. As explained ante, Clementi's will is exempt from section 21350 by virtue of section 21351, subdivision (i). Therefore, this argument fails.

*385 V. THE WILL MANIFESTS AN INTENT TO CREATE A CHARITABLE TRUST.

Finally, appellants argue the charitable residuary trust fails because Clementi's will does not manifest an intent to create a charitable trust. (§ 15201; Estate of Heil (1989) 210 Cal.App.3d 1503, 1510 [259 Cal.Rptr. 28].) The will reads, in relevant part, as follows: "I give the balance of my assets to a charitable foundation or trust in my name to be run by Richard Weisz. If Richard Weisz is not alive when I die, then I appoint his son, Frank Weisz[,] to run my charitable foundation or trust." Appellants argue the property should pass instead to them because of the lack of a specific charitable purpose or language in the will from which a specific charitable purpose can be construed.
(6) The general policy of this state is that gifts to charities are highly favored, and a charitable disposition in a will must be liberally construed to uphold its validity. (Estate of Tarrant (1951) 38 Cal.2d 42, 46 [237 P.2d 505]; Estate of Breeden (1989) 208 Cal.App.3d 981, 987 [256 Cal.Rptr. 813].)
All the relevant cases are squarely against appellants' position. California courts have regularly upheld the validity of charitable bequests that do not specify the charity, or even the general charitable purpose. In Estate of Quinn (1958) 156 Cal.App.2d 684, 685-686, 688 [320 P.2d 219], a direction in the testatrix's will that "the residue of the estate `go to charity,' even though without designation by the testatrix of the specific charitable purposes or objects of her bounty and without appointment or empowerment of a trustee or other person to select and designate such purposes and objects" was upheld. In Estate of Bunn (1949) 33 Cal.2d 897, 900 [206 P.2d 635], the testatrix's will provided that "the residue of her estate . . . should be sold and the proceeds given to a charity to be selected by her executor." The Supreme Court determined that an intent to create a charitable trust was established. (Ibid.) In Estate of Hurwitz (1952) 109 Cal.App.2d 302, 303 [240 P.2d 990], the testator's will read, in relevant part, as follows: "`The entire balance of my estate I leave to charity and the recipient of this charity shall be designated by my friend Harry I. Rubin of the Associated Bond & Insurance Agency. In other words, H. I. Rubin shall pick out the charity organization that shall receive the balance of my estate after all of the above is taken care of.'" As the appellate court concluded, "[t]hat a testamentary provision such as the foregoing creates a valid charitable trust is not open to question." (Ibid.)
Clementi's will manifested an intent to create a charitable trust. Appellants' arguments to the contrary fail.

*386 DISPOSITION
The judgment is affirmed. Respondents to recover costs on appeal.
Rylaarsdam, Acting P. J., and Moore, J., concurred.
NOTES
[1] Clementi had six siblings. As the probate court noted, however, "the issue of interpretation of this phrase is not currently before the court."
[2] Mario Chimenti, another of Clementi's nephews, was also a contestant of the will's probate; his appeal of the court's judgment was dismissed pursuant to California Rules of Court, rule 8.100(c).