[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1369 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1370 
OPINION
Stanley Wade Kelly (Stanley) died, leaving an estate worth over a million dollars. This case involves a dispute over the distribution of his estate. Stanley's father, E. George Kelly (Kelly), contends his son died intestate and he is the sole heir. Human Rights Campaign, Inc. (HRC), contends it is the sole beneficiary under a holographic will. Kelly, as administrator of his son's estate, appeals from an order that overruled objections to a petition for probate filed by HRC, set a time to hear the petition for probate, and did not approve Kelly's first and final report for final distribution of the estate.[1]
Kelly contends the probate court erred in determining that the time limits of Probate Code section 8226, subdivision (c) did not apply to bar as untimely the petition for probate of the holographic will. Following the plain meaning of the statute, we conclude that section did not apply because HRC never received notice of the petition for letters of administration, as required to trigger the statute. We affirm.
 FACTS
Stanley was found dead in March 2007.
Kelly petitioned for letters of administration later that month, claiming Stanley died intestate. The probate court issued letters of administration with *Page 1371 
full authority to administer the estate under the Independent Administration of Estates Act (Prob. Code, § 10400 et seq.) in April 2007.
In May 2007, Kelly notified HRC that it was the beneficiary of accounts Stanley had with Washington Mutual Bank.
Four years earlier, Stanley had sent HRC a holographic will that left his entire estate to HRC. HRC notified Kelly of the will in the summer of 2007. In September, HRC requested, pursuant to Probate Code section 1250, special notice of all matters relating to the estate.
In early December 2007, HRC petitioned to correct the record, admit the will to probate, designate HRC as sole testate beneficiary, revoke the order appointing Kelly as administrator and to appoint a different administrator.
On January 7, 2008, Kelly filed the first and final report as administrator. The report stated that Stanley died intestate; the total assets of the estate were $1,404,735.30; and Kelly was the sole heir. It proposed distributing the entire estate to Kelly.
A few days later, on January 10, 2008, HRC petitioned to probate the will. HRC also opposed the final report of the administrator and sought to remove Kelly as administrator.
The parties briefed the issue of whether Probate Code section 8226 applied and whether HRC's petition to probate the will was untimely. Kelly argued he notified HRC that Stanley's estate was being administered as an intestate estate in May 2007, and HRC waited 225 days to petition to probate the holographic will and thus its petition was untimely under the time limits set forth in Probate Code section 8226, subdivision (c). Kelly further argued that HRC lacked standing to object to the final report and petition for final distribution. HRC argued Kelly had a conflict of interest and that he failed to give HRC notice of the petition for letters of administration as required by Probate Code section 8110. Since proper notice was not given, the time limits of Probate Code section 8226 did not apply.
Kelly filed an amended final report as administrator. The amended report noted the existence of the purported will, but questioned its validity.
At the hearing on the matter, the probate court noted that in the focus on Probate Code section 8226, "we've lost sight of the bigger picture here." The bigger picture was that the administrator and his counsel had superfiduciary *Page 1372 
duties "not to mislead the court, and they have duties to make sure that the estate is probated and that it follows the wishes and the intent of the decedent." The court rejected the argument that counsel for the administrator was placed in an adversarial position; his duty was to probate the estate, not to obtain a distribution for Kelly. The court also rejected Kelly's argument that the failure to mention the will in the initial final report was simply a typographical error.
The probate court determined that written notice on a Judicial Council form was required to trigger the time limits of Probate Code section 8226, subdivision (c). Under Probate Code section 8226, subdivision (b), a will could be admitted until final distribution of the estate, and full distribution had not happened because the court did not approve the final accounting. Kelly's objections to the petition to probate the will were overruled.
 DISCUSSION Probate Code Section 8226
Probate Code section 8226 provides for the conclusiveness of admission of a will to probate and for when a new or competing will may be admitted to probate. Subdivision (c) provides time limits in certain circumstances. It provides as follows:
"(c) If the proponent of a will has received notice of a petition for probate or a petition for letters of administration for a general personal representative, the proponent of the will may petition for probate of the will only within the later of either of the following time periods:
"(1) One hundred twenty days after issuance of the order admitting the first will to probate or determining the decedent to be intestate.
"(2) Sixty days after the proponent of the will first obtains knowledge of the will." (Prob. Code, § 8226, subd. (c) (hereafter section 8226(c)).)
The dispute here centers on the words "received notice of . . . a petition for letters of administration. . . ." Kelly contends HRC only had to be aware the estate was being administered as an intestate estate. HRC argues Kelly had to comply with the notice requirements of the Probate Code to trigger the time limits set forth in section 8226(c). *Page 1373 
 Standard of Review
"In construing a statute, our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute. [Citation.] We begin with the language of the statute, giving the words their usual and ordinary meaning. [Citation.] The language must be construed `in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose."' [Citation.] In other words, `"we do not construe statutes in isolation, but rather read every statute `with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]"' [Citation.] If the statutory terms are ambiguous, we may examine extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we choose the construction that comports most closely with the Legislature's apparent intent, endeavoring to promote rather than defeat the statute's general purpose, and avoiding a construction that would lead to absurd consequences. [Citation.]" (Smith v. Superior Court (2006)39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218].)
 Analysis
We begin our analysis with the words of the statute: "received notice of . . . a petition for letters of administration. . . ." Kelly contends that since the Legislature did not use the word "service," it did not intend that the proponent of the will be served with notice. Further, since the Legislature did not specify "a" notice or "the" notice, it did not mean the proponent should receive a document. We disagree with this analysis.
Focusing on the language, we begin with the word "received." The usual and ordinary meaning of "received" suggests the proponent of the will was sent or given notice. For example, "`[a]ctual notice' is `notice given directly to, or received personally by, a party.'" (Nelson v. Superior Court (2001)89 Cal.App.4th 565, 574 [107 Cal.Rptr.2d 469], quoting Black's Law Diet. (7th ed. 1999) p. 1087.)
Kelly relies on the range of meanings of the dictionary definitions of "notice." We reject this argument for two reasons. First, in the context of the Probate Code, "notice" has a particular meaning, as it may have constitutional due process implications. (See, e.g., Tulsa Professional CollectionServices v. Pope (1988) 485 U.S. 478 [99 L.Ed.2d 565,108 S.Ct. 1340] [holding due process requires actual notice to reasonably ascertainable creditors of estate that nonclaim statute had begun to run]; Estate of Carter (2003)111 Cal.App.4th 1139 [4 Cal.Rptr.3d 490] [holding same rule applies to reasonably ascertainable heirs of intestate estate].) *Page 1374 
The Probate Code has numerous provisions regarding notice. Section 8110 provides for giving notice of a petition for administration of an estate, the type of notice at issue here. Notice must be served by mail or personal delivery on all reasonably ascertainable heirs, as well as any devisees and the executor under any will, at least 15 days before the hearing. (Prob. Code, § 8110.) In addition, notice must be given by publication. (Prob. Code, § 8120.) Further, the Probate Code has general provisions regarding notice that apply except as otherwise provided. (Prob. Code, § 1200 et seq.) One of these provisions provides: "If a notice or other paper is required to be served or otherwise given and no other manner of giving the notice or other paper is specified by statute, the notice or other paper shall be mailed or personally delivered as provided in this chapter." (Prob. Code, § 1217.) Reading "received notice" in the context of petitions for letters of administration, or even in the context of the Probate Code as a whole, notice must be given by mail or personal delivery.
There is a second reason for rejecting Kelly's contention that "notice" in section 8226(c) means only awareness or knowledge. The Legislature addressed this concept of awareness or knowledge in section 8226(c)(2) where it referred to when the will's proponent "first obtains knowledge of the will." "As our Supreme Court has noted, `[w]here different words or phrases are used in the same connection in different parts of a statute, it is presumed the Legislature intended a different meaning. [Citation.]' [Citation.]" (Estate of Clementi (2008)166 Cal.App.4th 375, 381 [82 Cal.Rptr.3d 685].) Thus, by using "received notice," in section 8226(c) instead of "obtains knowledge," as used in section 8226(c)(2), the Legislature presumably meant something different than having knowledge or awareness.
Kelly contends HRC received notice of "the probate proceedings" and cites six different incidents in which notice was given or from which notice could be inferred. These are: (1) Kelly's counsel's telephone call to HRC in May; (2) HRC faxing the will to Kelly's counsel on June 8; (3) HRC's June 18th e-mail regarding the validity of a photograph of the holographic will; (4) July 2 when counsel faxed to HRC Stanley's death certificate with a cover sheet noting "Estate of Stanley Wade Kelly"; (5) an August phone call from HRC to the administrator's counsel; and (6) HRC's September 12th request for special notice.
Section 8226(c) does not, however, require that the proponent of the will have notice of the probate proceedings generally; rather, it requires that he has received notice of the petition for letters of administration. Thus, the time limits of section 8226(c) were not triggered. Kelly fails to show that HRC received notice of the petition for letters of administration. Under a strict construction of section 8226(c), Kelly's argument fails. *Page 1375 
A strict construction of section 8226(c) is appropriate. The general rule under the Probate Code is that any interested person may petition to probate a will "[a]t any time." (Prob. Code, § 8000.) Probate Code section 8226, subdivision (b) provides in part: "Subject to subdivision (c), a will may be admitted to probate notwithstanding prior admission to probate of another will or prior distribution of property in the proceeding." Section 8226(c), with its time limits, is an exception to the general rule permitting a petition to probate a will at any time. An exception or limitation is to be strictly construed. (Lungren v. Deukmejian (1988) 45 Cal.3d 727,735-736 [248 Cal.Rptr. 115, 755 P.2d 299]; Howard JarvisTaxpayers Assn. v. County of Orange (2003)110 Cal.App.4th 1375, 1384 [2 Cal.Rptr.3d 514].)
Requiring notice of the petition, rather than simply notice of "the probate proceedings," fits with the purpose and intent of the statute. Section 8226(c) sets two time limits for admitting a will to probate: (1) 120 days after an order admitting a will to probate or determining the decedent is intestate; or (2) 60 days after the proponent of the will first obtains knowledge of the will. Under Kelly's interpretation, a proponent of a will could become aware of "the probate proceedings" more than 120 days after the order determining the decedent to be intestate and more than 60 days after knowledge of the will, thus the time to admit the new will would have lapsed before the triggering event of receiving notice. Kelly's interpretation of the statute runs afoul of the canon of statutory construction that directs us to interpret legislative enactments to avoid absurd results. (See People v. Valladoli (1996) 13 Cal.4th 590, 604
[54 Cal.Rptr.2d 695, 918 P.2d 999].)
Focusing on the words of the statute and applying well-known rules of statutory construction, we conclude that section 8226(c) applies only to those who have received notice of the petition for letters of administration pursuant to the notice provisions of the Probate Code. Since we conclude the language of the statute is not ambiguous, we need not resort to extrinsic aids such as legislative history for interpretation. (Lungren v. Deukmejian, supra, 45 Cal.3d at p. 735.)
Finally, relying on Code of Civil Procedure section 410.50, Kelly contends HRC waived any defect in notice by making general appearances. Code of Civil Procedure section 410.50 provides a court has jurisdiction over a party in a pending action if that party has been served with summons or has made a general appearance. HRC is not challenging the jurisdiction of the probate court over it. Instead, it is challenging the application of the time limits of section 8226(c). Code of Civil Procedure section 410.50 has no bearing on that issue. *Page 1376 
 DISPOSITION
The judgment (order) is affirmed. Costs on appeal are awarded to respondent. (Cal. Rules of Court, rule 8.278(a)(1).)
Nicholson, Acting P. J., and Butz, J., concurred.
Appellant's petition for review by the Supreme Court was denied June 24, 2009, S172866.
[1] Kelly appeals pursuant to Probate Code section 1303, subdivision (g), which makes an order granting or denying the distribution of property appealable. *Page 1377