Mmadi Mlatamou HASSANATI, individually, as heir and as Successor in Interest to Mohamed Abdou Said, deceased; Mmadi Mlatamou Hassanati, as Guardian ad Litem for MMR, MMR, MR, MMH, and MMH, minors and heirs to Mohamed Abdou Said, deceased, et al., Plaintiffs,

v.

INTERNATIONAL LEASE FINANCE CORPORATION and Does 1–100, Defendants.

Case No. CV 11–02251 MMM (MANx).

United States District Court, C.D. California.

Signed Feb. 18, 2014.

---

Mark Evans Millard, Walter John Lack, Engstrom Lipscomb and Lack, Thomas Vincent Girardi, Girardi Keese, Los Angeles, CA, for Plaintiffs.

Daniel A. Solitro, Patricia Arias Musitano, Susan J. Welde, Lock Lord LLP, Los Angeles, CA, Gary Westerberg, Matthew J. Kalas, Christopher R. Barth, Locke Lord Bissell and Liddell LLP, Chicago, IL, for Defendants.

ORDER DENYING PLAINTIFFS' MOTION TO APPOINT PERSONAL REPRESENTATIVES AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MARGARET M. MORROW, District Judge.

On January 10, 2010, Mmadi Mlatamou Hassanati, individually, as heir and successor to Mohamed Abdou Said, and as guardian ad litem for Said's children, filed this action in Los Angeles Superior Court.[1] Said perished in the crash of Yemenia

---

1. Defendant International Lease Finance Corporation's Notice of Removal ("Removal"),

Complaint, Docket No. 1 (Mar. 16, 2011) at 9.

Airlines Flight 626 on June 30, 2009.[2] The airplane crashed into the Indian Ocean after an allegedly unsuccessful attempt to land at the Moroni–Prince Said Ibrahim International Airport in Moroni, Comoros. On March 16, 2011, defendant International Lease Finance Corporation ("ILFC") removed the action, invoking the court's jurisdiction under the Multiparty, Multiforum Trial Jurisdiction Act of 2002 ("MMTJA"), 28 U.S.C. §§ 1369, 1441(a), and 1441(e)(1)(A).[3] Hassanati filed a first amended complaint on May 12, 2011, adding others whose loved ones had died in the crash as plaintiffs.[4]

On May 3, 2011, ILFC filed a motion to dismiss,[5] which the court granted on September 7, 2011 with leave to amend.[6] The court held that the Death on the High Seas Act ("DOHSA") applied and preempted any state law wrongful death claims.[7] The court concluded that plaintiffs had not stated a claim under DOHSA because claims under that statute must be asserted by the personal representative of the decedent on behalf of the appropriate beneficiaries, see 46 U.S.C. § 30302 ("When the

death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States, the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible. The action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative"), and the first amended complaint did not identify any individual plaintiff as the personal representatives of a decedent or plead facts from which the court could reasonably infer that any plaintiff was a personal representative.[8] The court noted that a " 'personal representative' is by definition a court-appointed executor or administrator of an estate, not merely an heir," and that the personal representative "must be a person empowered by law to administer the decedent's estate." [9] Plaintiffs concede that following issuance of the court's order, they had no contact with their local Comoran counsel for "quite some time." [10]

On September 27, 2011, plaintiffs filed a second amended complaint, in which they

2. Third Amended Complaint ("TAC"), Docket No. 74 (Sept. 20, 2012) ¶ 60.

3. Removal at 1–3.

4. First Amended Complaint ("FAC"), Docket No. 22 (May 12, 2011).

5. Motion to Dismiss, Docket No. 24 (May 3, 2011).

6. Order Granting Motion to Dismiss and Denying Motion to Remand Case ("Order"), Docket No. 40 (Sept. 7, 2011) at 24–25.

7. *Id.* at 17.

8. *Id.* at 18–20.

9. *Id.* at 19.

10. ILFC's Statement of Uncontroverted Facts and Conclusions of Law ("SUF"), Docket No.

86–1 (July 5, 2013), ¶ 4; Plaintiffs' Separate Statement of Uncontroverted Facts and Conclusions of Law ("SGI"), Docket No. 100 (Sept. 16, 2013), ¶ 4. In their statement of genuine issues, plaintiffs concede only that Comoran counsel was not responding to communications from Los Angeles counsel "for a period of time." (SGI, ¶ 4). In his declaration accompanying plaintiffs' motion to appoint personal representatives, however, plaintiffs' counsel states that "[p]laintiffs['] Comoran counsel became unavailable for quite some time[.]" (Declaration of Mark Millard ("Millard Decl."), Docket No. 82–1 (July 1, 2013), ¶ 5.) The court treats this statement by counsel as a party admission. Fed. R.Evid. 801(d)(2); *Totten v. Merkle*, 137 F.3d 1172, 1176 (1998) ("First, because it was Totten's habeas attorney who offered this document into evidence, it qualifies as an admission of a party. Under the federal rules, a statement made by an attorney is generally admissible against the client").

pled a single cause of action for wrongful death under DOHSA as the decedents' personal representatives; the claim was based on allegations that ILFC had negligently entrusted the aircraft involved in the crash to Yemenia Airlines.[11] On September 20, 2012, plaintiffs filed a third amended complaint to correct certain spelling errors and add the name of an omitted decedent.[12]

On July 1, 2013, plaintiffs filed a motion for an order appointing personal representatives for each decedent on whose behalf the action had been filed.[13] ILFC opposes the motion.[14] On July 5, 2013, ILFC filed a motion for summary judgment.[15] Plaintiffs oppose that motion.[16]

## I. BACKGROUND

### A. Factual and Procedural Background

ILFC is in the business of leasing aircraft to airlines.[17] In September 1999, ILFC purportedly leased a 1990 Airbus Model A310–300 to Yemenia Airlines, which is headquartered in Yemen and jointly owned by the governments of Yemen and Saudi Arabia.[18] The lease agreement purportedly provided that ILFC would continue to hold title to the aircraft, that the plane would have identification plates reflecting that ILFC was the owner, that insurance on the aircraft would name ILFC as an insured, and that the lease would be governed by California law.[19] The lease allegedly required Yemenia Airlines to operate the aircraft in accordance with the laws of any location to which it traveled, to maintain and repair the aircraft, and to keep up-to-date records and report monthly and annually to ILFC regarding maintenance of the aircraft.[20] The contract provided that a failure by Yemenia Airlines to maintain or insure the aircraft would constitute an immediate default that would allow ILFC to take possession of the plane or insist that it be grounded.[21]

On June 30, 2009, the leased aircraft crashed[22] into the Indian Ocean, allegedly after an unsuccessful attempt to land at the Moroni–Prince Said Ibrahim International Airport in Moroni, Comoros.[23] Only one passenger—a 14–year–old girl—survived.[24] The Comoros Islands are situated in the Indian Ocean east of Africa and closest to Mozambique.[25]

---

**11.** Second Amended Complaint, Docket No. 43 (Sept. 27, 2011), ¶¶ 1–44.

**12.** Order Granting Stipulation to Amend the Complaint, Docket No. 66 (Aug. 8, 2012); see also Opposition to Defendants' Motion for Summary Judgment ("MSJ Opposition"), Docket No. 98 (Sept. 16, 2013) at 11.

**13.** Motion to Appoint Personal Representatives ("Personal Representatives Motion"), Docket No. 82 (July 1, 2013) at 2.

**14.** Memorandum in Opposition to Motion to Appoint Personal Representatives ("Personal Representatives Opposition"), Docket No. 113 (Sept. 30, 2013).

**15.** Motion for Summary Judgment ("MSJ"), Docket No. 86 (July 5, 2013).

**16.** MSJ Opposition.

**17.** TAC, ¶ 49.

**18.** *Id.*, ¶¶ 52, 54–55.

**19.** *Id.*, ¶ 56.

**20.** *Id.*, ¶ 58.

**21.** *Id.*, ¶ 59.

**22.** *Id.;* SUF, ¶ 2; SGI, ¶ 2.

**23.** TAC, ¶ 60.

**24.** *Id.*, ¶ 68.

**25.** *Id.*, ¶ 61.

Plaintiffs allege that ILFC knew or should have known that Yemenia Airlines "was incompetent, unfit, inexperienced and/or reckless in its operations as an air carrier," given its history of poor maintenance, poor pilot training, and lack of compliance with safety standards.[26] They assert that a host of national and international regulatory bodies cited Yeminia Airlines for safety, training, and maintenance deficiencies in the years preceding the crash.[27] In 2007, the French government purportedly found numerous safety deficiencies during an inspection of the aircraft, and barred the aircraft from French airspace.[28]

Plaintiffs contend that ILFC negligently entrusted the aircraft to Yemenia Airlines, and that it knew or should have known that the aircraft was being operated in an unsafe manner.[29]

### B. Plaintiffs' Motion to Appoint Personal Representatives

The third amended complaint names forty-two plaintiffs and alleges that they are the personal representatives of the decedents.[30] None of the plaintiffs, however, has been appointed as the personal representative for any decedent by a court.[31] Plaintiffs seek to have the court issue an order appointing them as personal representatives for the decedents named in the third amended complaint, and substituting new personal representatives for six plaintiffs named in the operative complaint who have passed away or are otherwise unable to act.[32] They argue that the court has authority to appoint them as personal representatives and substitute new representatives, and that both orders should relate back to the filing of the original complaint. ILFC counters that the court lacks jurisdiction to appoint plaintiffs as the decedents' personal representatives, and additionally that plaintiffs do not satisfy the requirements for appointment as personal representatives under California law. Finally, it asserts that any appointment should not relate back to the filing of the original complaint, and consequently, that plaintiffs' claim is time-barred.[33]

### C. Defendant's Motion for Summary Judgment

The parties raise similar arguments in support of and opposition to ILFC's motion for summary judgment. ILFC contends that plaintiffs lack standing to prosecute their DOHSA claim because they have not been appointed personal representatives of the decedents, and that the statute of limitations has now expired. Plaintiffs counter that they can seek and obtain appointment as personal represen-

---

26. *Id.,* ¶ 69.

27. *Id.,* ¶¶ 69, 80.

28. *Id.,* ¶ 80.

29. *Id.,* ¶¶ 78–90.

30. *Id.,* ¶¶ 1–44. Youssouf Itrisso Fatima is identified as the personal representative for both Youssoufa Hassana and Youssoufa Hassanati. (*Id.,* ¶¶ 28–29.) It is unclear whether Youssoufa Hassana and Youssoufa Hassanati are one in the same.

31. SUF, ¶ 1; SGI, ¶ 1. ILFC asserts that no plaintiff has been appointed personal repre-

sentative, while plaintiffs concede only that they have not received a "Judicial appointment." Under DOHSA, personal representatives must be appointed by a court. *Alcabasa v. Korean Air Lines Co., Ltd.,* 62 F.3d 404, 407 (D.C.Cir.1995) ("[A] 'personal representative' is by definition a court-appointed executor or administrator of an estate, not merely an heir"). Consequently, the distinction plaintiffs attempt to draw is not a meaningful one.

32. Personal Representatives Motion at 2.

33. *Id.*

tatives, and that the appointment should relate back to the filing of the original complaint.

## II. DISCUSSION

### A. Standard Governing Motions for Summary Judgment

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.PROC. 56(c). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); FED.R.CIV.PROC. 56(e). Conclusory, speculative testimony in affidavits or moving papers is insufficient to meet this burden, or raise genuine issues of fact defeating summary judgment. *See Nelson*

*v. Pima Community College*, 83 F.3d 1075, 1081–82 (9th Cir.1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment"); *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979).

In judging the evidence presented in support of or opposition to summary judgment, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. See *T.W. Electrical Service, Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987). Nonetheless, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. See *Falls Riverway Realty, Inc. v. Niagara Falls*, 754 F.2d 49, 56 (2d Cir.1985); *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

### B. The Statutory Framework of DOHSA

The Death on the High Seas Act provides:

"When the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States, the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible. The action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative." 46 U.S.C. § 30302.

Where death is caused by a commercial aviation accident, the statute only applies if the accident occurred twelve nautical miles or more from shore, not three. 46 U.S.C.

§ 30307(c).[34]

Because DOHSA actions must be prosecuted by the personal representative of the decedent, beneficiaries are not independently allowed to file claims under the statute. *Renner v. Rockwell Intern. Corp.*, 403 F.Supp. 849, 851 (C.D.Cal.1975) ("However, actions under both DOHSA and general maritime law must be brought by the personal representative of the decedent on behalf of the appropriate beneficiaries. Therefore, defendant's motion to dismiss the complaint as to all plaintiffs other than the personal representatives must be granted" (citations omitted)), vacated on other grounds, 587 F.2d 1030 (9th Cir.1978); see also *Homlaor v. Korean Air Lines Co., Ltd.*, No. 84 Civ. 4083(TPG), 1997 WL 289477, *3 (S.D.N.Y. May 30, 1997) ("Only the personal representative of the decedent has a cause of action under DOHSA, not the beneficiaries named in the statute or any other beneficiary of the decedent's estate"); *Cruz v. Korean Air Lines Co., Ltd.*, 838 F.Supp. 843, 847 (S.D.N.Y.1993) ("In other words, the children lack standing to prosecute their claims, which may only be prosecuted through the personal representative of the decedent's estate.... Under DOHSA, then, the only plaintiff in this action is Roberta Cruz, as the appointed personal representative of the decedent's estate, and she could bring claims on behalf of others as well as on behalf of herself and her deceased husband's estate" (citations omitted)); *Cao v. Nguyen*, Civ. A. No. 92–1669, 1992 WL 373563, *1 (E.D.La. Dec. 7, 1992) ("Beneficiaries may not bring maritime wrongful death actions, even where there is a conflict of interest with the decedent's authorized personal representative").

■ A personal representative must be appointed by the court. *In re Air Crash Disaster off Coast of Nantucket Island, Massachusetts on October 31, 1999*, No. MD–00–1344 (BMC), 2010 WL 1221401, *4 (E.D.N.Y. Mar. 29, 2010) ("Defendants' position is fairly straightforward. They assert that the Death on the High Seas Act ('DOHSA') governs this dispute; that under the DOHSA, only a court-appointed personal representative of the deceased may bring suit for wrongful death; and that plaintiff Mohamed, who only became a personal representative of his deceased parents' estate almost seven years after the limitations period expired, lacks the capacity to sue. I agree with defendants"); *id.* at *5 ("A 'personal representative of the decedent must be a person empowered by law to administer the decedent's estate,'" citing *Complaint of Cosmopolitan Shipping Co., S.A.*, 453 F.Supp. 265, 266 (S.D.N.Y.1978) ("The term personal representative requires some designation by a court that the individual seeking to prosecute the wrongful death action is an administrator of the decedent's estate")); see also *Alcabasa*, 62 F.3d at 407 ("[A] 'personal representative' is by definition a court-appointed executor or administrator of an estate, not merely an heir," citing *Briggs v. Walker*, 171 U.S. 466, 19 S.Ct. 1, 43 L.Ed. 243 (1898)); *Homlaor*, 1997 WL 289477 at *3 ("The 'personal representative' of the decedent must be a person empowered by law to administer the decedent's estate").

■ DOHSA claims must be brought within three years of a decedent's death.

---

**34.** This difference is immaterial, since plaintiffs allege that Yemenia Airlines Flight 626 crashed over the Indian Ocean. (TAC, ¶ 68). The court takes judicial notice of the fact that the Indian Ocean is more than 12 nautical miles from the shore of the United States. See *Heay v. Phillips*, 201 F.2d 220, 223 (9th Cir.1952) (taking judicial notice of Alaska's large size).

46 U.S.C. § 30106; *Friel v. Cessna Aircraft Co.*, 751 F.2d 1037, 1038 (9th Cir. 1985). A DOHSA action accrues at the time the injury occurs. *Moyer v. Rederi*, 645 F.Supp. 620, 627 (S.D.Fla.1986). Thus, absent tolling, the statute of limitations in this case expired on June 30, 2012.

Because plaintiffs have not been appointed personal representatives, and the statute has expired, the court begins by addressing plaintiffs' motion to appoint personal representatives. If the court is unable to grant plaintiffs' motion, or if the appointment does not relate back to the filing of the original complaint, then ILFC will be entitled to summary judgment as a matter of law.

### C. Whether the Court Has Jurisdiction to Appoint Personal Representatives

■ ILFC argues that, as a threshold matter, the court lacks jurisdiction to appoint plaintiffs as personal representatives. "The probate exception is a jurisdictional limitation on federal courts that 'reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court.'" *Hollander v. Irrevocable Trust Established by James Brown in August 1, 2000*, No. CV 10–7249 PSG (AJWx), 2011 WL 2604821, *2 (C.D.Cal. June 30, 2011) (quoting *Marshall v. Marshall*, 547 U.S. 293, 311–12, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006)). Although some courts apply the exception only in diversity cases, the Ninth Circuit applies the exception in federal question cases as well. See *In re Marshall*, 392 F.3d 1118, 1132 (9th Cir.2004), rev'd on other grounds, 547 U.S. 293, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006); see also *Jones v. Brennan*, 465 F.3d 304, 306–07 (7th Cir.2006) (citing

*Marshall*, noting the split of authority as to whether probate exception applies only in diversity cases or may be invoked in federal question cases as well, and holding that the exception applies to both); Bruce S. Ross and Jeryll S. Cohen, CALIFORNIA PRACTICE GUIDE: PROBATE ¶ 3:60.25 (The Rutter Group 2013) ("There is a long-established so-called 'probate exception' to otherwise proper federal court jurisdiction: Even where federal district court jurisdiction otherwise exists (e.g., based on diversity of citizenship or a 'federal question'), federal courts may not exercise jurisdiction to probate or annul a will, administer a decedent's estate or otherwise endeavor to dispose of property in the custody of a state probate court").

The Ninth Circuit has adopted the two step analysis set forth by the Second Circuit in *Moser v. Pollin*, 294 F.3d 335, 340 (2d Cir.2002), for purposes of determining whether the probate exception applies. *In re Marshall*, 392 F.3d at 1132. "The first part of the inquiry focuses on the question whether the matter is purely probate in nature, in that the federal court is being asked directly to probate a will or administer an estate. As the *Moser* court noted 'since few practitioners would be so misdirected as to seek, for example, letters testamentary or letters of administration from a federal judge,' the answer to this question is almost always 'No.'" *Id.* at 1133. The second step asks if "the matter is probate related by determining whether, by exercising jurisdiction over the matter, the federal court would: (1) interfere with the probate proceedings; (2) assume general jurisdiction of the probate; or (3) assume control over property in custody of the state court." *Id.*

■ This case appears to be one of the unusual situations referenced by the *Moser* court in which counsel seeks to have the court issue letters of administration. See

CAL. PROB.CODE § 8400(a) ("A person has no power to administer the estate until the person is appointed personal representative and the appointment becomes effective. Appointment of a personal representative becomes effective when the person appointed is issued letters"). The court cannot issue the order plaintiffs seek because the appointment of personal representatives falls squarely within the probate exception. See *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Relevant Products Liability Litigation,* No. 3:09–md–02100–DRH–PM, 2010 WL 4608609, *1 (S.D.Ill. Nov. 4, 2010) ("Moreover, the appointment of a personal representative for decedent is a probate-type proceeding; such proceedings are typically outside the power of the federal courts"); *Sequoia Property and Equipment Ltd. Partnership v. United States,* No. CV–F–97–5044–LJO, 2002 WL 32388132, *3 (E.D.Cal. June 3, 2002) ("In addition, the Government seeks this Court's appointment of Mr. Crisp as Mrs. Crisp's personal representative. However, a state probate court, not a federal court, is empowered to make such an appointment"); *Wilson v. Sundstrand Corp.,* No. 99 D 6944, 99 C 6946, 2002 WL 99745, *4 (N.D.Ill. Jan. 25, 2002) ("Plaintiffs, seeking extra protection, have moved this Court to appoint them as special administrators. These motions are denied. A federal court lacks the authority to appoint a special administrator"); *Jones v. Harper,* 55 F.Supp.2d 530, 533 (S.D.W.Va.1999) ("While generally this Court has diversity jurisdiction to entertain wrongful death suits between parties of diverse citizenship, the probate exception prevents this Court from granting the preliminary relief—in West Virginia—of removing the defendant [husband] and appointing the plaintiff [father] as personal representative. The removal and appointment of a personal representative clearly would in-

terfere with the administration of the estate"); *Coleman v. McLaren,* 590 F.Supp. 38, 39 (N.D.Ill.1984) ("Paragraph 2–1008(b) itself requires 'the court' (and of course that obviously speaks of an Illinois state court) to serve 'such notice to the party's heirs, legatees or devisees as the court directs,' and then provides [that] the same court 'without opening of an estate, may appoint a special administrator for the deceased party for the purpose of prosecuting or defending the action.' " That substitution for formal probate proceedings nonetheless partakes of a probate-type power (involving ascertainment of heirs, legatees or devisees and appointment of the personal representative, all as only a probate court may normally do)); William W. Schwarzer, A. Wallace Tashima, James M. Wagstaffe, CALIFORNIA PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL ¶ 2:1699 (The Rutter Group 2013) ("The probate exception prohibits federal courts from exercising jurisdiction over property in the possession of fiduciaries appointed by a state court. This includes removal and/or appointment of a personal representative of the decedent's estate because this clearly would interfere with administration of the estate," citing *Mangieri v. Mangieri,* 226 F.3d 1, 2 (1st Cir.2000), and *Jones,* 55 F.Supp.2d at 533); but see *United States v. Hyland,* No. C05–0266RSL, 2007 WL 836801, *1 n. 1 (W.D.Wash. Mar. 14, 2007) (stating in dicta that "[a]lthough appointing a personal representative could arguably be construed as 'administering an estate,' the probate exception to federal court jurisdiction is unlikely to be implicated if the Court appoints a representative for the limited purpose of this litigation and while no probate matter is proceeding or contemplated").

The court agrees with the weight of the authority, and concludes that under the probate exception, it lacks jurisdiction to

appoint plaintiffs as the personal representatives of the decedents.

### D. Legal Standard Governing the Appointment of Personal Representatives

■ ILFC argues that plaintiffs' application should be denied for the additional reason that it fails to follow the requirements of the California Probate Code. Under Rule 17(b) of the Federal Rules of Civil Procedure, the capacity of one acting in a representative capacity to sue is determined by the law of the state where the court is located. FED.R. CIV.PROC. 17(b); *Smith v. Cimmet*, 199 Cal.App.4th 1381, 1393, 132 Cal.Rptr.3d 276 (2011) ("The local law of the forum—not the law of the appointing jurisdiction—determines the extent to which the forum will recognize the authority of a foreign representative ...."). California follows the common law rule that a personal representative cannot sue in his or her representative capacity outside the state of appointment. *Smith*, 199 Cal.App.4th at 1391, 132 Cal.Rptr.3d 276 (citing *Vaughan v. Northup*, 40 U.S. 1, 5–6, 15 Pet. 1, 10 L.Ed. 639 (1841)); see also *id.* at 1393, 132 Cal.Rptr.3d 276 ("A foreign jurisdiction like Oregon 'cannot confer, as a matter of right, any authority to collect assets of the deceased[ ] in any other state; and whatever operation is allowed to it beyond the original territory of the grant, is a mere matter of comity' exercised by the forum state. Oregon's statute cannot, as a matter of right, confer any authority upon its representatives to prosecute actions in California" (citation omitted)); CAL. CODE CIV. PROC. § 1913(b) ("The authority of a guardian, conservator, or committee, or of a personal representative, does not extend beyond the jurisdiction of the government under which that person was invested with authority, except to the extent expressly authorized by statute"). Accordingly, to be appointed personal representatives for purposes of this action, plaintiffs must satisfy the requirements of California law.

As noted, the appointment of a personal representative becomes effective when the court issues letters. CAL. PROB. CODE § 8400(a). "Letters," as the term "relates to a personal representative, means letters testamentary, letters of administration, letters of administration with the will annexed, or letters of special administration." *Id.*, § 52(a). Additional requirements apply to personal representatives who reside outside California or the United States. A person residing outside California may be appointed a "nonresident personal representative," but must sign and file a statement of his or her permanent address and a notice upon any change of address. *Id.*, §§ 8570; 8573. The court may require a nonresident personal representative to furnish a bond. *Id.*, § 8571. Prior to the issuance of letters, the representative must take an oath to perform the "duties of the office," and file an acknowledgment of receipt of a "statement of [the] duties and liabilities of [the] office." *Id.*, §§ 8403, 8404. A person who is not a resident of the United States is not competent to act as a personal representative unless he or she is "named as executor or successor executor in the decedent's will." *Id.*, § 8402.

"Ancillary administration" proceedings are proceedings for the administration of the estate of a non-domiciliary decedent; these can include the appointment of a local personal representative. *Id.*, §§ 12501, 12510. The same procedures used to appoint personal representatives for California-domiciled decedents are used to appoint personal representatives in ancillary administration proceedings. *Id.*, § 12512.

" 'Ancillary administration' may be required in either of two cases: (a) when a probate is opened in California, but decedent has left property in another jurisdiction (state or country); or (b) when a probate is opened in another jurisdiction, but the out-of-state decedent has left property in California. In the first case, the ancillary administration is in the other state ('ancillary' to the California probate); and in the second case, the ancillary administration is in California ('ancillary' to the other state's probate)." Ross and Cohen, *supra*, ¶¶ 14:290. Property includes intangibles, such as claims for monetary damages. See CAL. CIV.CODE § 953; *Smith*, 199 Cal.App.4th at 1394, 132 Cal. Rptr.3d 276 ("Under California law, a cause of action to recover monetary damages on behalf of an estate is a local asset that provides a basis for ancillary administration"); see also *Estate of Waits*, 23 Cal.2d 676, 678, 146 P.2d 5 (1944) ("It is generally recognized that the courts of a state other than that in which the decedent was domiciled cannot appoint an administrator if there are no assets within the jurisdiction. It is also generally recognized that a cause of action for wrongful death, which is enforceable within the jurisdiction, and which the personal representative is charged with enforcing, is such an asset").

"As a general practice, a foreign representative who wants to sue, collect claims, or otherwise exercise authority over the decedent's property situated in California petitions a California court for ancillary probate administration." *Smith*, 199 Cal. App.4th at 1391, 132 Cal.Rptr.3d 276 (citing CAL. PROB.CODE § 12500 et seq., and Ross and Cohen, *supra*, ¶¶ 14:290 et seq.) "The California court then appoints a local personal representative (commonly, the same person appointed by the sister state) who is then vested with authority to marshal California assets." *Smith*, 199 Cal.

App.4th at 1391–92, 132 Cal.Rptr.3d 276 (citing CAL. PROB. CODE §§ 12504, 12513).

Proceedings for the administration of an estate, including ancillary proceedings, are commenced by filing a petition for probate in California state court. CAL. PROB.CODE §§ 8000, 12530. A petition must contain:

(1) The date and place of the decedent's death.

(2) The street number, street, and city, or other address, and the county, of the decedent's residence at the time of death.

(3) The name, age, address, and relation to the decedent of each heir and devisee of the decedent, so far as known to or reasonably ascertainable by the petitioner.

(4) The character and estimated value of the property in the estate.

(5) The name of the person for whom appointment as personal representative is petitioned. *Id.*, § 8002(a).

In addition, if the decedent left a will, the petitioner must attach a copy of the will, and if it is written in a foreign language, the petitioner must include a correct English translation. *Id.*, § 8002(b).

[6] A hearing on the petition will be set fifteen to thirty days after it is filed. *Id.*, § 8003(a). Due process requires that notice of the hearing be given to all "interested persons." *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 489–90, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988) (holding that published notice was not sufficient to apprise known or reasonably ascertainable creditors that they must file claims); *Estate of Carter*, 111 Cal. App.4th 1139, 1145–46, 4 Cal.Rptr.3d 490 (2003) (holding that *Tulsa Professional Collection Services* requires that reasonably ascertainable heirs or potential heirs be given notice). Two forms of notice are required. Heirs, devisees, and any non-

petitioning executor or alternate executor named in the will must be served at least fifteen days before the hearing. Additionally, notice must be published in an appropriate newspaper in the city where the decedent resided or where the decedent's property is located. CAL. PROB. CODE §§ 8003(b), 8100, 8110, 8120, 8121; see also *Estate of Kelly,* 172 Cal.App.4th 1367, 1374, 91 Cal.Rptr.3d 674 (2009); Ross and Cohen, *supra,* ¶ 3:171. The initial petition cannot be heard unless an affidavit showing publication of the notice of hearing has been filed. CAL. PROB. CODE § 8124. If a citizen of a foreign country dies intestate or leaves a will without naming an executor, or if it appears that property will pass to a citizen of a foreign country, notice must be given to "a recognized diplomatic or consular official of the foreign country maintaining an office in the United States." *Id.,* § 8113.

### E. Whether Plaintiffs Have Satisfied the Legal Standard for Appointment as Personal Representatives

■ Even if the court had jurisdiction to consider plaintiffs' motion for the appointment of personal representatives, it could not grant it, since plaintiffs' application does not satisfy California's requirements for the appointment of personal representatives. The declaration of Mark Millard suggests that some or all of the proposed personal representatives reside outside of the United States.[35] These plaintiffs have not filed a statement of permanent address with the court, CAL. PROB. CODE § 8570, nor have they shown that they are the executors or successor

executors of their decedent's will, *id.,* § 8402. More fundamentally, although plaintiffs have provided the name of the person for whom they seek to be appointed personal representative, *id.,* § 8002(a)(5), they have satisfied none of the other requirements set forth in § 8002. Specifically, no plaintiff has filed a document stating the date and place of the decedent's death; the decedent's address at the time of death; the name, age, address, and relation to the decedent of each heir and devisee;[36] or the character and estimated value of the estate property. *Id.,* § 8002(a)(1)-(4). Nor have they provided a copy of the decedent's will. *Id.,* § 8002(b).

ILFC argues that plaintiffs have also failed to comply with the notice requirements.[37] To the extent the court construes plaintiffs' motion as a petition under § 8002, and the hearing on the motion as a hearing pursuant to §§ 8003 and 8005, plaintiffs have not satisfied the notice requirement, because they did not file an affidavit showing that they published notice of the hearing as required by the California Probate Code. See *id.,* § 8124; see also *id.,* §§ 8003; 8100, 8110, 8113, 8120, 8121.

Plaintiffs cite *Wallan v. Rankin,* 173 F.2d 488, 493 (9th Cir.1949), for the proposition that "[a] foreign representative may bring a wrongful death action in California federal court under [a] sister state statute as intermediary for decedent's widow and children."[38] In *Wallan,* the Ninth Circuit departed from the usual rule requiring ancillary administration in suits by an Ore-

---

**35.** Millard Decl., ¶ 83 ("Plaintiffs Personal Representatives in France and the Comoros …").

**36.** The documents plaintiffs filed with their motion list only the names of each beneficiary and his or her relationship to the decedent. (Exhibits to Declaration of Mark E. Millard,

Docket Nos. 82–2, 82–3, and 82–4 (July 1, 2013), Exhs. 1–44.)

**37.** Personal Representatives Opposition at 14.

**38.** Personal Representatives Motion at 3.

gon administratix and Oregon executor who sued as statutory trustees solely for the benefit of the dependents of the decedents. *Id.* at 493. The court observed: "[T]here can be little doubt that as a matter of comity the courts of that state would entertain a suit by a foreign administrator or executor seeking recovery, as here, in the special statutory capacity of a trustee for the benefit solely of the dependants of his decedent." *Id.*

To the extent plaintiffs intimate that they can bypass ancillary administration and the need to secure appointment by the state court as personal representatives of the decedents, they misapprehend the holding in *Wallan.* Plaintiffs have not shown that they have been appointed administrators or executors in another state or country. Consequently, the *Wallan* exception does not apply. See *Smith,* 199 Cal.App.4th at 1392, 132 Cal.Rptr.3d 276 ("There is also a distinction made between a foreign representative acting in that capacity on behalf of the decedent (which is generally barred) and a foreign representative acting in another capacity such as trustee, judgment creditor, or intermediary for decedent's survivors in a wrongful death action (which is generally permitted)"). Appointment in some jurisdiction is particularly necessary here where only personal representatives have authority to assert a claim under DOHSA.

Plaintiffs argue in their reply that DOHSA does not require that there be a local estate in order to maintain a DOHSA action.[39] The court, however, lacks authority to appoint personal representatives, and California requires that a personal representative who wishes to sue in the state

open an ancillary probate proceeding and secure appointment by the California court. More fundamentally, there is no evidence that any of the individual plaintiffs seeking appointment as personal representatives has in fact been appointed in his or her home jurisdiction. Thus, plaintiffs have not satisfied in any respect DOHSA's requirement that suit be filed by a personal representative rather than directly by the heirs of a decedent.

Citing *Stoddard v. Ling–Temco–Vought, Inc.,* 513 F.Supp. 339 (C.D.Cal.1981), and *Chermesino v. Vessel Judith Lee Rose, Inc.,* 211 F.Supp. 36, 39 (D.Mass.1962), plaintiffs also argue that the court apportions any recovery among the appropriate heirs, such that there would be no assets for an estate to manage.[40] In each of the cases on which plaintiffs rely, however, plaintiffs sued as the administrator of a decedent's estate. *Stoddard,* 513 F.Supp. at 339; *Chermesino,* 211 F.Supp. at 37. Neither case holds that a plaintiff can proceed in such a capacity absent appointment by a state court.

Finally, plaintiffs argue that a federal court's power to appoint a guardian ad litem for a minor under Rule 17(c) is similar to DOHSA's requirement that the action be initiated by a personal representative of the decedent.[41] Courts have squarely rejected this view. See *Coleman,* 590 F.Supp. at 39 (the court's power to appoint a personal representative under Rule 17(c) is limited to appointment of guardians ad litem for infants or incompetents, and "[b]y negative implication no such power exists to appoint a personal representative in the case of a decedent");

---

**39.** Reply to Opposition to Defendant International Lease Finance Corporation's Opposition to Plaintiffs' Motion for Appointment of Personal Representatives ("Reply to Personal Representatives Opposition"), Docket No. 114 (Oct. 7, 2013) at 3.

**40.** Personal Representatives Motion at 3.

**41.** *Id.* at 4–5.

*In re Yasmin and Yaz,* 2010 WL 4608609 at *2 ("Section (c) of Rule 17, the only section that authorizes a federal court to appoint a personal representative, is specifically limited to appointment of next friends or guardians ad litem for infants or incompetents. The Court agrees with a sister court in this Circuit which stated that Section (c), '[b]y negative implication [demonstrates that] no such power exists to appoint a personal representative in the case of a decedent' ").

For all of these reasons, even if the court had jurisdiction to appoint plaintiffs as personal representatives of the decedents, it would be unable to do so because plaintiffs have not satisfied the prerequisites to appointment nor demonstrated that they have been appointed by the courts of the decedents' domicile.

### F. Whether Appointment Would Relate Back

Plaintiffs argue that under Rule 17, their appointment as personal representatives should relate back to the time they filed their complaint,[42] and that the amendment to the complaint required by the substitution of new plaintiffs, whom they also seek to have appointed as personal representatives, should similarly relate back under Rule 15(c).[43] Rule 17(a)(3) provides: "The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." FED. R.CIV.PROC. 17(a)(3).

"A literal interpretation of Rule 17(a)(3) would make it applicable to every case in which an inappropriate plaintiff has been named. However, the rule should be applied only to cases in which substitution of the real party in interest is necessary to avoid injustice." 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, FED-ERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1555 (2013). The Advisory Committee Notes to the 1966 amendment to Rule 17 illustrate this principle:

> "The provision ... is added simply in the interests of justice.... Modern decisions are inclined to be lenient when an *honest mistake* has been made in choosing the party in whose name the action is to be filed—in both maritime and nonmaritime cases. The provision should not be misunderstood or distorted. It is intended to prevent forfeiture *when determination of the proper party to sue is difficult or when an understandable mistake has been made.*" FED.R.CIV.PROC. 17(a), Advisory Committee Notes to the 1996 Amendments (citations omitted and emphasis added).

Rule 15(c) provides that an amendment to a pleading will relate back to the date of the original pleading when

> "the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (I) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity. FED.R.CIV. PROC. 15.

---

**42.** Personal Representatives Motion at 5.

**43.** *Id.* at 12.

Rule 15(c)(1)(B) is satisfied where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]"

The 1966 Advisory Committee notes to Rule 15 clarify that the rule also applies to amendments changing plaintiffs. FED. R.CIV.PROC. 15, Advisory Committee Notes to the 1966 Amendments ("The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier. Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs").

Rule 15 and Rule 17 are closely related, see 1966 Advisory Committee Notes to FED. R.CIV.PROC. 15(c); Wright et al., *supra*, § 1501, and courts have applied them in tandem, see *United States for Use and Benefit of Wulff v. CMA, Inc.*, 890 F.2d 1070, 1073–75 (9th Cir.1989) (applying Rules 15(c)-(d) and 17(a) in holding that an amended complaint did not relate back); see also *Crowder v. Gordons Transports, Inc.*, 387 F.2d 413, 417–18 (8th Cir.1967) (applying Rules 15(c) and 17(a) in holding that an amended complaint related back).[44]

ILFC relies on cases in which courts concluded that an amendment did not relate back because plaintiffs were attempting to use relation back to evade the statute of limitations. In *Wulff,* for example, plaintiffs asserted a claim under the Miller Act six days before the statute of limitations expired, seeking money the defendant contractor owed its subcontractor; plaintiffs had previously obtained a default judgment against the subcontractor. *Id.* at 1071. Because the Miller Act does not

apply to creditors of contractors, however, plaintiffs' complaint did not state a cause of action under the Act. *Id.* at 1072, 1074. More than eight months later, plaintiffs obtained a written assignment of the subcontractor's claim against the contractor; they amended their complaint to allege the assignment in order to bring the claim within the ambit of the Act. *Id.* at 1073.

The Ninth Circuit held the supplemental complaint did not relate back to the original complaint under Rule 15(d), because it involved "what is essentially a new party pursuing a new claim based on different facts." *Id.* at 1073. The court then held that Rule 17(a) did not apply because plaintiffs' persistent efforts to obtain an assignment from the subcontractor showed they knew the subcontractor was the real party in interest. It observed: "[T]here was no difficulty and no mistake in determining who was the proper party to bring suit." *Id.* at 1074–75. It added that "Rule 17(a) does not apply to a situation where a party with no cause of action files a lawsuit to toll the statute of limitations and later obtains a cause of action through assignment. Rule 17(a) is the codification of the salutary principle that an action should not be forfeited because of an honest mistake; it is not a provision to be distorted by parties to circumvent the limitations period." *Id.* at 1075.

Courts have declined to apply Rule 17(a) in DOHSA actions where plaintiffs filed suit within the statute of limitations alleging that they were the personal representatives of a decedent's estate, but did not obtain appointment until after the statute of limitations had expired. In *Cao,* 1992 WL 373563, the court followed *Wulff* and held that Rule 17(a) did not apply to a

---

**44.** In *Wulff,* the Ninth Circuit concluded that Rule 15(d) applied, rather than Rule 15(c), because the amendment concerned the as-

signment of a claim after the action was commenced. It held, however, that the distinction was immaterial. 890 F.2d at 1073.

DOHSA action filed by the decedent's sister four days before the statute of limitations expired; the sister alleged that she was the administratrix of the decedent's estate, but was not actually appointed until nearly five months later. *Id.* at *1–3. Citing *Wulff,* the court held that "Rule 17(a) does not apply to Ms. Cao, who filed this lawsuit when she had no cause of action, and later obtained the cause of action through her appointment as administratrix. Her efforts to obtain that status indicate that she was well aware that she did not have the right to bring this action when it was filed." *Id.* at *2.

Similarly, in *In re Air Crash Disaster off Coast of Nantucket Island, Massachusetts on October 31, 1999,* 2010 WL 1221401, plaintiff filed a DOHSA claim as the decedent's personal representative, but only sought appointment as personal representative months later. Nearly eight years passed before he was finally appointed. *Id.* at *5–6. The court held Rule 17(a) did not apply and noted that plaintiff's efforts to secure appointment as personal representative after he filed his lawsuit showed that he knew he did not have the right to bring the action. *Id.* at *6. As

the court explained: "Rule 17(a) has no application to plaintiff Mohamed, who filed this lawsuit when he had no cause of action and later obtained the cause of action through his appointment as a representative." *Id.*[45]

Other courts, by contrast, have permitted DOHSA actions to proceed where the plaintiff filed suit when not yet appointed personal representative, and secured appointment only after the statute of limitations had expired. In a recent case in this district, *In re Seaway Co. of Catalina,* No. CV 11–0336 PA (Ex), 2013 WL 877393 (C.D.Cal. Mar. 7, 2013), the plaintiff filed a DOHSA claim within the statute of limitations, but was not appointed personal representative of the decedent's estate until slightly more than a month after the limitations period expired. *Id.* at *10. The court held that plaintiff had standing to assert the claim because he "cured the real party in interest issue within a reasonable time." *Id.* at *10. It did not further detail its reasoning.

Plaintiffs cite *Estate of Hirata v. Ida,* No. 10–00084 LEK, 2012 WL 3777148 (D.Haw. Aug. 28, 2012), in which the plain-

---

**45.** Plaintiffs note that *In re Air Crash Disaster off Coast of Nantucket Island* is an unpublished case. (Personal Representatives Motion at 17.) To the extent plaintiffs intimate that this and other unpublished cases are without precedential value, they are mistaken. See *Continental Western Ins. Co. v. Costco Wholesale Corp.,* No. C10–1987 RAJ, 2011 WL 3583226, *3 (W.D.Wash. Aug. 15, 2011) ("When looking to another federal district court decision, it generally does not matter whether the decision is 'published' in an official reporter, 'unpublished' in that it is published only on an electronic database, or 'unpublished' in the sense that it exists only in paper format in the archives of whatever court issued it. A few district court judges designate some of their own decisions as "Not for Publication" or "Non–Precedential" and decree that others should not cite them. Whatever legal effect their decrees might

have, as a practical matter they serve as a signal to another court that the court issuing the decision did not intend it to contribute to shaping the law. Sometimes, moreover, the length and tenor of a decision (be it published or unpublished) suggests that the issuing court did not intend it to contribute to the development of the law. This court takes that into consideration when reviewing any non-binding precedent of another court. But this court has never forbidden the citation of 'unpublished' federal district court decisions"); see also *Bahrampour v. Lampert,* 356 F.3d 969, 977 (9th Cir.2004) ("The district court determined that in forming its regulations, ODC properly relied on unpublished opinions, despite their lack of binding precedential effect. ODC argues before this Court that unpublished decisions can be considered in determining whether the law was clearly established. We agree").

tiff filed an ERISA action on behalf of her deceased husband's estate before she was appointed personal representative. By the time she secured appointment, the statute of limitations on the ERISA claim had expired. *Id.* at *4. The court examined the application of the relation back doctrine in DOHSA cases, and concluded, *inter alia,* that "summary judgment or dismissal is proper if, by the time the district court enters a dispositive order, the plaintiff has not resolved, or cannot resolve, her lack of capacity to sue. It is also relevant whether the plaintiff resolved, or could resolve, the lack of capacity within the limitations period." *Id.* at *12–13. The court cited *In re Anderson,* 847 F.Supp.2d 1263 (W.D.Wash.2012), as support for this proposition. In *Anderson,* the court dismissed a Jones Act claim—which can be brought only by the injured seaman or his personal representative—because plaintiff "[was] not the decedent's personal representative," and "ha[d not] made any attempt to undertake the steps necessary to be appointed the decedent's personal representative." *Id.* at 1269–70. The *Anderson* court cited *Graca v. Rosebank Maritime, Inc.,* No. 04–14302, 2005 WL 6458603 (11th Cir. Mar. 8, 2005) (Unpub.Disp.), for the proposition that a district court should focus on the plaintiff's status at the time the court enters its order. *Id.* at *2. The *Graca* court made this statement in distinguishing an earlier case, *Glickstein v. Sun Bank/Miami N.A.,* 922 F.2d 666 (11th Cir.1991), abrogated on other grounds by *Saxton v. ACF Industries, Inc.,* 254 F.3d 959, 963 (11th Cir. 2001). In *Glickstein,* the Eleventh Circuit held that a district court, which had dismissed an action with prejudice, should have stayed it instead to await resolution of a pending state court action in which the plaintiff sought to be appointed personal representative. The court noted that had the action been stayed, the state court

appointment could have related back under Rule 15(c). *Id.* at 671. These cases suggest that courts should look to plaintiffs' status at the time a dispositive order is entered to determine if plaintiffs have initiated the process of seeking appointment as personal representatives or have secured such an order.

Plaintiffs also cite cases in which courts have applied Rule 17 in non-DOHSA settings. *Brohan v. Volkswagen Mfg. Corp. of America,* 97 F.R.D. 46 (E.D.N.Y.1983), was a wrongful death action filed after a decedent was killed by a malfunctioning cherry picker. *Id.* at 48. The decedent's widow filed an action on October 2, 1979; New York law required that the claim be brought only by the decedent's personal representative. *Id.* at 49. Plaintiff, however, filed the action as an individual and did not secure appointment as executrix of her husband's will until after September 2, 1982, nearly one year after the statute of limitations had expired. *Id.* at 48. The concluded held that plaintiff had made an "honest mistake," and that her "lateness in obtaining and pleading her appointment as executrix [was] the kind of technical mistake apparently contemplated by Rule 17(a)." *Id.* at 49. The court then addressed whether plaintiff had moved to cure the mistake within a "reasonable time" as required by Rule 17(a). *Id.* It observed that the issue of standing had first been raised on November 24, 1980, and that plaintiff moved to amend her complaint to sue as executrix on October 19, 1982. It found this was a "reasonable time" within the meaning of Rule 17(a). *Id.*

In *Crowder v. Gordons Transports, Inc.,* 387 F.2d 413 (10th Cir.1967), an Arkansas widow instituted a timely action for the wrongful death of her husband as administratrix of his estate in the mistaken belief that the Arkansas wrongful death statute

governed her claim. *Id.* at 414. The defendant moved to dismiss on the ground that the Missouri wrongful death statute applied, which required that the action be brought in the widow's own name and in the name of the next friend of her children. *Id.* Before the court ruled on the motion, the plaintiff sought and received leave to amend her complaint to substitute herself as mother and next friend of her minor children. *Id.* The defendant then moved to dismiss the amended complaint on the ground that it was barred by the statute of limitations. The district court granted the motion, *id.*, but the Eighth Circuit reversed, *id.* at 419. Applying Rules 15(c) and 17(a), the court concluded that "any mistake in bringing the action initially in the name of the administratrix is understandable and excusable," and that the defendant had suffered no prejudice. *Id.* at 419.

In *Esposito v. United States,* 368 F.3d 1271 (10th Cir.2004), the district court dismissed a Federal Tort Claims Act wrongful death action filed in the name of the decedent. *Id.* at 1272. The court denied plaintiff's motion to substitute the decedent's widow and administratrix as plaintiff after the limitations period had expired, reasoning that Rule 17(a) did not apply because while the mistake in naming decedent as plaintiff was "honest," it was not "understandable." *Id.* The Tenth Circuit reversed. *Id.* The court stated: "In this circuit, however, we have never required a plaintiff seeking substitution to show that his mistake was 'understandable' in addition to being 'honest.' Instead, our cases focus primarily on whether the plaintiff engaged in deliberate tactical maneuvering (i.e. whether his mistake was 'honest'), and on whether the defendant was prejudiced thereby." *Id.* at 1276. The rule in the Ninth Circuit, however, appears to be different. In *Wulff,* the court emphasized that "The purpose of . . . Rule

17(a) is to prevent forfeiture of an action when determination of the right party to sue is difficult or when an understandable mistake has been made." 890 F.2d at 1074. See also *Dunmore v. United States,* 358 F.3d 1107, 1112 (9th Cir.2004) (stating that under Rule 17(a), "[p]rovided Dunmore's decision to sue in his own name was an 'understandable mistake,' the real party in interest's ratification relates back to the October 17, 1997, filing date of the complaint," and citing *Wulff*); *Goodman v. United States,* 298 F.3d 1048 (9th Cir.2002) (quoting Wright & Miller's statement that "Rule 17(a) 'is designed to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought,'" and citing *Wulff*). These cases suggest that the court must evaluate whether plaintiffs were unaware they needed to obtain appointment as the decedents' personal representatives at the time they filed the action. Plaintiffs can make a credible argument that they were unaware of the need to secure appointment as the decedents' personal representatives, since their original complaint did not plead a claim under DOHSA. No later than September 7, 2011, however, when the court decided ILFC's first motion to dismiss, plaintiffs knew that the only claim they could assert was a DOHSA claim, and that in order to prosecute the claim, they had to be appointed the personal representatives of the decedents. Plaintiffs filed an amended complaint twenty days later, on September 27, 2011, alleging that they were the decedents' personal representatives, but took no steps to secure appointment until they filed the instant motion on July 1, 2013. Although the court is not aware of any evidence that plaintiffs engaged in deliberate efforts to circumvent the statute of limitations, cf. *Wulff,* 890 F.2d at 1075 (Rule 17(a) is not to be used

to "circumvent the limitations period"), it is also not aware of any evidence that following receipt of the court's September 2011 order, plaintiffs made an honest and understandable mistake when they alleged that they were the personal representatives of the decedents without having made any effort to secure appointment in California or to ensure that they had been appointed in the decedent's domicile at the time of death, compare *Esposito*, 368 F.3d at 1276; *Crowder*, 387 F.2d at 419; *Brohan*, 97 F.R.D. at 49. Nor is there evidence that plaintiffs made diligent efforts to secure appointment as personal representatives, see *In re Anderson*, 847 F.Supp.2d at 1269–70, or that they initiated a probate action prior to filing the second amended complaint or indeed, prior to filing this motion, cf. *Glickstein*, 922 F.2d at 671.

Plaintiffs cannot claim "honest" ignorance of the personal representative requirement—and, to their credit, they do not attempt to do so—because the court informed them in its September 7, 2011 order that a DOHSA action must be brought by the decedents' personal representatives, that a " 'personal representative' is by definition a *court-appointed* executor or administrator of an estate, not merely an heir," and that a personal representative "must be a person *empowered by law* to administer the decedent's estate." [46] Although plaintiffs filed an amended complaint twenty days later alleging that they were the decedents' personal representa-

tives, they inexplicably waited until July 1, 2013 to file a motion seeking appointment, and then filed the motion in a court that lacks jurisdiction to grant the relief they seek. The cases plaintiffs cite, in which courts applied Rule 17(a) to permit late appointment as a personal representative to relate back to the filing of the original complaint, are thus distinguishable because plaintiffs here took no steps to remedy their lack of standing for more than two years after being apprised of the deficiency by the court. Indeed, plaintiffs *still* have taken no effective steps to secure appointment as the decedents' personal representatives,[47] see *In re Anderson*, 847 F.Supp.2d at 1269–70 (dismissing a Jones Act claim because plaintiff "ha[d not] made any attempt to undertake the steps necessary to be appointed the decedent's personal representative"), and ILFC has now filed a dispositive motion asserting lack of standing, see *Graca*, 2005 WL 6458603 at *2 (evaluating capacity to sue as of the date the district court granted a motion to dismiss); see also *Estate of Hirata*, 2012 WL 3777148 at *13 ("summary judgment or dismissal is proper if, by the time the district enters a dispositive order, the plaintiff has not resolved, or cannot resolve, her lack of capacity to sue").

Plaintiffs's counsel assert that he was unable to communicate with his clients in the Comoros because plaintiffs' Comoran counsel was unavailable "for quite some time." [48] This argument is unavailing.

---

**46.** Order at 18–20 (emphasis added).

**47.** This distinguishes the present situation from *Brohan*, where the court found that a plaintiff who secured appointment as personal representative some two years after the defendant first raised lack of standing in its answer had acted within a reasonable time. See *Brohan*, 97 F.R.D. at 49.

**48.** Declaration of Mark E. Millard in Support of Plaintiffs['] Opposition to Motion for Sum-

mary Judgment, Docket No. 99 (Sept. 16, 2013), ¶¶ 7–8. Millard's declaration states that plaintiffs have counsel both in France and Comoros. (*Id.*, ¶ 6.) Millard does not assert that he was unable to communicate with French counsel during the period Comoran counsel were unavailable. Sixteen plaintiffs are French citizens and 46 are French residents; this is in addition to 73 Comoran citizens and 53 Comoran residents. (Declaration of Mark E. Millard in Support of Plain-

See *In re Air Crash Disaster off Coast of Nantucket Island,* 2010 WL 1221401 at *6 ("Unfortunately for plaintiff, his attorney's failure to complete the appointment process when it should have been completed does not justify tolling the statute of limitations period. Having chosen to retain his attorney, plaintiff is responsible for his attorney's negligent conduct or bad advice in connection with the action," citing *Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664, 666 (2d Cir.1980) ("Absent a truly extraordinary situation ... the client is not excused from the consequences of his attorney's nonfeasance")). Simply stating that plaintiffs' Comoran counsel became "unavailable" for "quite some time" does not describe an extraordinary situation. Indeed, it is so vague an explanation that it provides virtually no rationale for plaintiffs' two year delay in taking steps to secure appointment as the decedents' personal representatives. Moreover, even assuming some delay was justified, counsel then opted to pursue an approach to securing appointment that overlooked the fact that a federal court lacks jurisdiction to make such appointments. Because plaintiffs did not act within a reasonable time to secure appointment as the personal representatives of the decedents once advised by the court of the need to do so, and because ILFC has now filed a dispositive motion asserting lack of standing that the court decides in this order, the court concludes that any subsequent appointment of plaintiffs as the decedents' personal representatives would not relate back under Rules 17(a) and 15(c).

## G. Whether ILFC Waived Any Objection to Plaintiffs' Appointment as Personal Representatives

■ Plaintiffs also argue that ILFC has waived any objection to their appointment as personal representatives.[49] ILFC first objected that plaintiffs had not alleged they were the personal representatives of the decedents more than two years ago in its motion to dismiss plaintiffs' original complaint;[50] it raised a similar objection in its motion to dismiss plaintiffs' first amended complaint.[51] ILFC's answer to plaintiffs' second amended complaint denied that plaintiffs were properly appointed personal representatives,[52] and raised plaintiffs' lack of capacity and/or standing to assert a DOHSA claim as an affirmative defense.[53] Given its consistent invocation of the defense, the court cannot find that ILFC waived the argument.[54] See *Helman v. Alcoa Global Fasteners, Inc.,* 843 F.Supp.2d 1038, 1042 n. 4 (C.D.Cal.2011) ("Plaintiffs' argument that Defendants waived any objection to standing is incorrect. As Defendants note, the issue of standing was addressed in answers filed by Defendants Sikorsky and General Electric as well in a Rule 12(c) motion filed by

tiffs' Opposition to Defendant's Motion to Dismiss Based on Forum Non Conveniens Issues ("Millard Decl."), Docket No. 57 (May 7, 2012), Exh. 17.)

**49.** MSJ Opposition at 21–22.

**50.** Notice of Motion and Motion to Dismiss, Docket No. 17 (April 22, 2011) at 5.

**51.** Notice of Motion and Motion to Dismiss, Docket No. 24 (May 31, 2011) at 5.

**52.** Answer to Amended Complaint, Docket No. 44 (Oct. 17, 2011), ¶¶ 1–44.

**53.** *Id.* at 16.

**54.** At the hearing, plaintiffs argued that ILFC first objected to their status in its motion for summary judgment, and that plaintiffs had not had "a reasonable time" to demonstrate that they are the real parties in interest or to substitute the real parties as required by Rule 17(a)(3). This argument ignores ILFC's multiple prior objections that plaintiffs had not alleged and had not demonstrated that they were the personal representatives of the decedents.

Sikorsky"); *In re Air Crash Disaster off Coast of Nantucket Island*, 2010 WL 1221401 at *6 (rejecting a waiver argument).[55]

### H. Whether the Relatives on Whose Behalf Plaintiffs Sue Can Recover Under DOHSA

■ ILFC next contends that plaintiffs have not demonstrated that all of the individuals identified in the documents attached to their motion fall within the narrow class of beneficiaries eligible to recover under DOHSA.[56] As noted earlier, a DOHSA action must be brought "for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative." 46 U.S.C. § 30302. "Where Congress has specifically enumerated the individuals who qualify as beneficiaries under DOHSA, the courts may not alter or expand

**55.** Although the *In re Air Crash Disaster off Coast of Nantucket Island* court analyzed whether plaintiffs were entitled to bring a DOHSA claim as a question of capacity to sue, and addressed waiver under Rule 9(a), the more appropriate question is whether plaintiffs are the real party in interest under Rule 17(a), which does not implicate Rule 9(a). See Wright et al, *supra*, § 1542 ("As used in Rule 17(a), the real-party-in-interest principle is a means to identify the person who possesses the right sought to be enforced. Therefore, the term directs attention to whether plaintiff has a significant interest in the particular action plaintiff has instituted, and Rule 17(a) is limited to plaintiffs. By way of contrast, capacity is conceived to be a party's personal right to litigate in a federal court. The issue is determined under Rule 17(b) and Rule 17(c) for all parties to the suit and is neither limited to plaintiffs, nor dependent on the character of the specific claim involved in the litigation. Thus it is possible to be the real party in interest and yet lack capacity to sue because a person has become mentally incompetent or is an infant. Conversely, a person may have capacity to sue under Rule 17(b), but if the person has assigned all interest in the claim before the action is instituted, the person no longer is the real party in interest. Although real party in interest and capacity occasionally have been confused by the courts without notable consequence to the parties, the distinction can have procedural significance"). "Federal Rule of Civil Procedure 9(a) requires that the lack of capacity defense be raised 'by a specific denial, which must state any supporting facts that are peculiarly within the parties' knowledge.' The capacity defense is an affirmative defense, and can be waived if not raised 'in a timely matter, i.e., at the outset of the lawsuit.' " *In re Air Crash Disaster off Coast of Nantucket Island*, 2010 WL 1221401 at *6 (citations omitted). See also *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 878 (9th Cir.2000) ("Case law in this circuit states that the 'specific negative averment' must be made 'in the responsive pleading or by motion before pleading,' " quoting *Summers v. Interstate Tractor & Equip. Co.*, 466 F.2d 42, 49–50 (9th Cir.1972)). Although not subject to the heightened requirements of Rule 9(a)(2), in the Ninth Circuit, Rule 17(a) is an affirmative defense that is waived if not raised in a timely manner. *United States ex rel. Reed v. Callahan*, 884 F.2d 1180, 1183 n. 4 (9th Cir.1989) (refusing to address a real party in interest defense raised for the first time on appeal); see also Wright et al, *supra*, § 1542 ("Despite the absence of a comparable requirement in the rules for objecting to a party's failure to comply with Rule 17(a), that defense, since it is dilatory in nature, also should be raised promptly. Any unreasonable delay may encourage the court to deny the objection on the ground of prejudice"). ILFC satisfied either rule, because it raised the defense in its motion to dismiss plaintiffs' original and first amended complaints, and again in its answer to plaintiffs' second amended complaint.

The court notes that, in contrast to *In re Air Crash Disaster off Coast of Nantucket Island*, the *Helman* court analyzed plaintiffs' ability to file a DOHSA action as a question of standing. Standing, of course, acts as a limitation on the subject matter jurisdiction of federal courts and can be raised by a party or by the court *sua sponte*. See Wright et al., *supra*, § 1542 ("In this context, objections to standing, unlike Rule 17(a) objections, cannot be waived and may be raised by a federal court *sua sponte* ").

**56.** Personal Representatives Opposition at 12–13.

the class of beneficiaries." *In re Air Crash Near Nantucket Island, Massachusetts, on October 31, 1999,* Nos. 00–MD–1344, 02–CV–00101 (FB), 2003 WL 21913235, *2 (E.D.N.Y. Aug. 8, 2003) (citing *Dooley v. Korean Air Lines,* 524 U.S. 116, 122, 118 S.Ct. 1890, 141 L.Ed.2d 102 (1998) ("For deaths on the high seas, DOHSA 'announces Congress' considered judgment on such issues as the beneficiaries[ ] . . . [and the courts are] not free to 'rewrit[e] rules that Congress has affirmatively and specifically enacted' ")). In *Air Crash Near Nantucket Island,* the court held that the decedents' stepchildren were not entitled to assert DOHSA claims because they were not "children," and had not demonstrated that they were financially dependent on their stepmother. 2003 WL 21913235 at *2–3.

Plaintiffs attach documents to their motion listing individuals they assert are decedents' lawful heirs and identifying those individuals' relationships to the decedents.[57] The individuals identified include persons who are not a spouse, parent, or child of the decedent, and plaintiffs have adduced no evidence that such individuals were financially dependent on the decedent. Accordingly, the court is unable to conclude that the beneficiaries who are identified as other than a decedent's spouse, parent or child are eligible beneficiaries under DOHSA.

### I. Conclusion Regarding Plaintiffs' Motion to Appoint Personal Representatives

The court lacks jurisdiction to appoint plaintiffs as the personal representatives of the decedents. Even if the court had jurisdiction, moreover, it could not grant plaintiffs' motion because their application is deficient under California law and they have not shown that they were duly appointed by any other state or country. Consequently, plaintiffs' motion is denied. Plaintiffs ask that the court afford them a reasonable time to seek appointment as personal representatives in California probate court.[58] Because the court has concluded that any appointment would not relate back under Rule 17(a), affording plaintiffs additional time would be futile.

### J. Whether the Court Should Grant ILFC's Motion for Summary Judgment

As noted, the parties' arguments in support of and opposition to ILFC's motion for summary judgment are similar to the arguments advanced concerning plaintiffs' motion for appointment as personal representatives. In support of its motion, ILFC adduces evidence that plaintiffs have not been appointed personal representatives by any foreign court. Specifically, ILFC proffers a letter from counsel for Yemeni Airlines stating that the airline has conducted "extensive investigations" of the plaintiffs, and that, with one exception, they are pursuing claims in their own right against Yemenia in either France or the Comoros.[59] The letter states that Yemenia has not discovered any court orders appointing or confirming the appointment of any plaintiff as a personal representative of any claimant or family member.[60]

---

**57.** Millard Exhs., Exhs. 1–44. Two of the numbered exhibits state that they have intentionally been left blank, while four state that there is a missing "affidavit" that will be submitted at a later date. Plaintiffs did not supplement their filing prior to the date of the hearing.

**58.** Reply to Personal Representatives Opposition at 5.

**59.** Declaration of Matthew J. Kalas, Docket No. 86–2 (July 5, 2013), ¶¶ 2–3; *id.,* Exh. A.

**60.** *Id.*

910

ILFC also proffers exemplars of plaintiffs' responses to interrogatories; it asserts that every plaintiff provided identical answers.[61] In response to an interrogatory asking plaintiffs to "identify the relevant court, tribunal or administrative agency that appointed you to act" as a personal representative and the date the relevant order, directive, or appointment was issued, plaintiffs stated they were "not currently in possession of the requested information."[62]

In opposition to ILFC's summary judgment motion, plaintiffs proffer the evidence they adduced to support their motion for appointment as personal representatives. Plaintiffs also proffer their responses to ILFC's interrogatories, as well as the letter from Yemenia's counsel.[63] Plaintiffs do not dispute that they have not been judicially appointed to act as personal representatives.[64] Reviewing the record as a whole, it is clear that plaintiffs have adduced no evidence raising triable issues of fact as to whether they are personal representatives who can sue under DOHSA.[65] Accordingly, the court grants ILFC's motion for summary judgment.

### III. CONCLUSION

For the reasons stated, plaintiffs' motion to appoint personal representatives is de-

61. *Id.*, ¶ 4; *id.*, Exhs. C.

62. *Id.*, Exh. C.

63. MSJ Opposition, Exhs. 4–6, Docket Nos. 101–110.

64. SGI, ¶ 1; SUF, ¶.1.

65. ILFC made several evidentiary objections to plaintiffs' evidence. (Reply in Support of Motion for Summary Judgment, Docket No. 111 (Oct. 7, 2013) at 15–18.) Because the court has concluded that it is appropriate to grant ILFC's motion for summary judgment, it need not address ILFC's objections to the admissibility of plaintiffs' evidence.

nied and ILFC's motion for summary judgment is granted.